# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## OCTOBER TERM, 1866.

---

## THE COUNTY OF CALAVERAS *v.* S. W. BROCKWAY, JAMES BARCLAY, GEORGE C. TRYON, WILLIAM J. DAKIN, AND CHARLES FAVILLE.

AVERMENT IN A COMPLAINT OF THE RESULT OF AN ELECTION.—A statement in a petition for a writ of mandate, that an election was held in a county to decide whether C. or S. should be the county seat, and that the Board of Supervisors canvassed the returns, and estimated the vote, and declared the result to be that S. had received a majority of the votes, is a sufficient averment that S. received a majority of the votes cast.

ABATEMENT OF ACTION TO OBTAIN WRIT OF MANDATE.—The writ of mandate cannot be abated by another action pending for the same cause.

PLEA OF ANOTHER ACTION PENDING.—A plea to abate an action by reason of another action pending, is not good, unless it show that the pending action was brought for the same cause as the one in which the plea is interposed.

ABATEMENT OF ACTION BY FORMER ACTION PENDING.—An action cannot be abated by a former action pending for the same cause, unless the parties are the same.

ACT FOR CONTESTING ELECTIONS.—The Act of 1850 relating to the contesting of elections of county officers, relates only to persons, and does not apply to elections held in a county for selecting a county seat.

CANVASSING VOTES CAST AT ELECTION FOR A COUNTY SEAT.—The Board of Supervisors of a county is the proper authority to canvass the votes cast at a special

election for a county seat, and to declare the result, although the Act providing for the election does not in express terms make them so.

DETERMINATION OF A BOARD OF SUPERVISORS AS TO THE RESULT OF AN ELECTION NOT CONCLUSIVE.—The determination of the Board of Supervisors, that a place voted for received a majority of the votes cast at a special election for a county seat, is *prima facie* evidence of the fact so determined, but is not conclusive ; and if the fact was not as determined, it may be attacked for fraud or mistake, and the true result ascertained.

CANVASSING ELECTION RETURNS NOT A JUDICIAL ACT.—A Board of Supervisors, in canvassing the returns of an election, and declaring the result, do not act in a judicial but in a ministerial capacity.

WRIT OF MANDATE.—Proceeding by mandamus is the proper remedy to compel Judges to hold their Courts, and county officers to keep their offices, at a county seat.

SUPREME COURT WILL SEND ISSUES OF FACT TO DISTRICT COURT FOR TRIAL.—If a question of fact upon issues joined arises in a proceeding ·by mandamus commenced in the Supreme Court, that Court will refer the matter to a District Court, to try and determine the special fact in issue, and return the finding to the Supreme Court.

PARTIES TO PROCEEDING IN MANDAMUS.—In a proceeding by mandamus commenced by a county against its officers, to compel them to hold their offices at the county seat, in which an issue arises as to which of two places voted for as county seat received a majority of the votes, one of the places voted for cannot appear as a party to the action.

PERFORMANCE OF A CONDITION PRECEDENT NAMED IN A LAW.—If one ·of the conditions of a law, submitting to the electors of a county the question whether the county seat shall remain where it is or be removed to a place named in the Act, is, that prior to the election the citizens of that place shall raise a sum of money named, to pay expenses óf removal, and to be applied in erecting county buildings, and deposit it with a banking firm to be designated by the Board of Supervisors, the conditions of the Act are complied with, if the money is raised and tendered to a banking firm thus designated, even though the firm refuse to receive it. If, after such refusal, the money is deposited with another banking firm, and the Board of Supervisors afterwards ratify it, they make the deposit their own act.

LAW TO REMOVE COUNTY SEAT.—If a law provides that before a county seat is removed, the citizens of the place to which the removal is to be made shall raise a certain sum of money and deposit with a banking firm, to be used in paying expenses of removal and in erecting new county buildings, and the money is raised and deposited, the citizens raising the money cannot designate for what purpose it shall be applied, for the law has declared the purpose.

CONSTRUCTION OF LAWS.—The primary rule in the construction of laws is, to so read them as to give force and effect to the intent of the Legislature, and when the object of a law is to subserve some purpose in which the public are interested, Courts 'will hold a provision to be mandatory or directory, as will best subserve that purpose.

WAIVER OF A LITERAL COMPLIANCE WITH A LAW.—The people of a county,. in their *quasi* corporate capacity, may waive a strict compliance with the letter of a statute passed for the benefit of the county, provided there has been a substantial compliance with its terms.

THE application for the writ in this case was made to the

Supreme Court.   After the reference to the District Court to try the special issues, the District Court returned the following as the questions submitted to a jury, and their answers thereto :

First—Did the citizens of San Andreas, in the County of Calaveras, contribute the sum of fifteen thousand dollars in gold or silver coin, and deposit the same with some responsible banking firm named by the Board of Supervisors of the County of Calaveras, as a fund to be used by said Board of Supervisors of said county, or a majority of them, in defraying the expenses of the removal of the county seat of said county and towards the erection of the necessary county buildings at the Town of San Andreas ?

*Answer*—No ; but they did raise said sum in gold and silver, and did deposit the same with a responsible banking firm, for the purpose of erecting the necessary county buildings at San Andreas.

Second—If you answer the above question yea, then at what date was such money contributed and deposited ?

*Answer*—On the 16th day of May, 1863, with Donahoe, Ralston & Co., of the City of San Francisco.

Third—By what mode was said banking firm designated ?

*Answer*—The Board of Supervisors of said County of Calaveras, by an entry in their minutes of their session on the 8th day of May, 1863, ordered that the said moneys be deposited with the banking house of Davidson, Berri & Co., in San Francisco.   We find that the said money was delivered by the citizens of San Andreas to S. B. Stephens, as their agent for making such deposit; that said Stephens took the same to San Francisco and offered to deposit said sum with said firm of Davidson, Berri & Co., and the said firm declined to receive the same.   We further find that said Stephens telegraphed to P. W. Cornwall, one of the said Board, such fact, and thereupon a dispatch was sent to said Stephens in the following terms: " San Andreas, May 16, 1863—S. B. Stephens : Deposit with either Banks & Co., Donahoe, Ralston & Co., Par-

rot & Co., Tallant & Wilde, Sather & Church, Hentsch & Burton, or Mark Brummagim & Co.   P. W. Cornwall, George Congdon."   That said Cornwall and Congdon were at that time two of the members of said Board of Supervisors; that in accordance with said dispatch said Stephens then deposited the sum with Donahoe, Ralston & Co., therein named, upon the terms and conditions contained in a receipt, of which the following is a copy : "Exchange and Banking House of Donahoe, Ralston & Co., San Francisco, (Cal.,) May 16, 1863.— Received of S. B. Stephens, of San Andreas, Calaveras County, for and on behalf of the citizens of said town, the sum of fifteen thousand dollars ($15,000) on deposit, in United States gold coin, said sum having been contributed by said citizens to be used as a fund for the purpose of erecting the necessary county buildings at San Andreas; said sum of fifteen thousand dollars ($15,000) to be paid over to the Board of Supervisors of said County of Calaveras, provided the county seat of Calaveras County shall by law be located at San Andreas aforesaid, as provided by an Act of the Legislature of the State of California, approved April 8, 1863.   The terms and conditions of the deposit being that we will pay the said sum of $15,000 to the Board of Supervisors of said county on receipt of official notice from the County Clerk of the removal of the county seat as aforesaid.   And if said county seat shall not be removed from Mokelumne Hill to San Andreas, as provided by said Act of the Legislature, then the said sum of $15,000 is to be returned to Mr. S. B. Stephens, the depositor, (this receipt to be returned to us properly indorsed on the payment of the deposit,) or the Board of Supervisors.   Donahoe, Ralston & Co."   That on the 19th day of February, 1864, the said Board of Supervisors entered upon their minutes an order as follows : "And it is further ordered, that after such removal of all the county officials, together with all books, papers, and other movable property belonging to the County of Calaveras, shall have taken place, and the county seat located at San Andreas, that immediately

thereafter the County Clerk of Calaveras County notify the firm of Donahoe, Ralston & Co. of the removal."

Fourth—What number of votes was cast by the qualified electors of Calaveras County at the special election held under the Act of the Legislature of the State of California, entitled an Act to submit the question of the removal of the county seat of Calaveras County to the qualified electors thereof, approved April 8, 1863 ?

*Answer*—Six thousand nine hundred and fourteen.

Fifth—Of the number of votes so cast, what number of them was for Mokelumne Hill for county seat, and what number was for San Andreas for county seat ?

*Answer*—For Mokelumne Hill, three thousand three hundred and forty-seven; for San Andreas, three thousand five hundred and sixty-seven.

The second opinion, that of Mr. Justice RHODES, was delivered after the return of the findings to the Supreme Court.

The other facts are stated in the opinions.

*H. P. Barber*, for Petitioner, argued that the Board of Supervisors had power to canvass the votes and declare the result, although the Act did not so provide in terms, because any other construction would render the Act a nullity, and because the Board possessed power to canvass election returns and declare the result by the general law.   He also argued that the decision of the Board could not be questioned in a collateral proceeding, and could only be impeached in a direct proceeding ; and cited 8 N. Y. 67 ; *People* v. *Supervisors of Green Co.*, 12 Barb. 217 ; *Rusher* v. *Sherman*, 28 Barb. 591 ; *Cloud* v. *El Dorado Co.*, 12 Cal. 133 ; *El Dorado Co.* v. *Eltaner*, 18 Cal. 144 ; *Waugh* v. *Chauncey*, 13 Cal. 11 ; and *Magee* v. *Supervisors of Calaveras Co.*, 10 Cal. 376.

*Shafter, Goold & Dwinelle*, for Defendants, argued that the determination of the Board of Supervisors as to the number of votes cast, and for which place cast, was not a judicial but a

42

ministerial act; and cited Cushing's Law and Practice of Legislative Assemblies, Sec. 140. They contended that the defendants were not parties to the proceedings of the Board of Supervisors, and were not bound by them.

They also argued that the Acts concerning contested elections were totally inapplicable to this election, and applied only to offices and officers.

They further argued that the result arrived at by the Board of Supervisors could be inquired into by a collateral proceeding, and that such was the case in all legislative bodies, the practice being to consider the certificate of election only *prima facie* evidence; and cited Cushing, Sec. 142; and 10 Cal. 376. They contended that in *quo warranto* the validity of an election was only collaterally involved, and yet the Court in that proceeding would go behind the declared result, and ascertain what the real vote was.

Upon the point that the Court could go behind the determination of the Board, they cited *People* v. *Hopson*, 1 Denio, 574; 3 Johnson's Cases, 79; and *People* v. *Van Slyck*, 4 Conn. 297.

Upon the point that the duties of the Board were ministerial, they cited *Plymouth* v. *Painter*, 17 Conn. 585; and *Fowler* v. *Bebee*, 9 Mass. 231.

H. P. Barber, Coffroth & Spaulding, and W. J. Gatewood, for Petitioner, upon motion for peremptory writ of mandate after the return from the District Court, argued, that if the verdict of the jury showed that there had not been a literal compliance with the Act, still the object and intention of the Legislature should not be defeated. That the intention was to enable the people of Calaveras County to change their county seat, and that the omission by the citizens of San Andreas to perform some act should not defeat the expressed wishes of the majority of the people, and that the Act should receive a liberal construction for the purpose of carrying out the popular will. They also contended that a strictly technical compliance with a condition precedent was not necessary

to vest a right; and cited 4 Barb. 614; 3 Sand. Sup. Ct. R. 151; and *People* v. *Supervisors of Richmond*, 22 How. Pr. R. 276.

They also argued that the only condition required of the inhabitants of San Andreas was to deposit the sum of fifteen thousand dollars in the manner shown; that this signified their acceptance of the provisions of the Act, and that it then lay with the Board of Supervisors to make the necessary appropriation of the funds.

*George Cadwalader*, for Defendants, argued that the law making Mokelumne Hill the county seat was not to be deemed repealed until San Andreas strictly complied with the conditions imposed on her by law, as these were conditions precedent; and cited 1 Washburne on Real Property, 448; *Brannan* v. *Mesick*, 10 Cal. 108; and 2 Dallas, 317.

He argued that the condition that San Andreas should deposit the money with a banking firm designated by the Board of Supervisors, was as obligatory as that San Andreas should get a majority of the votes. He also argued that the ratification of the place of deposit by the Board having taken place after the election, that it was void under the Act, which made it obligatory on the Board to designate the banking house before the election; and cited Story on Agency, Secs. 251–440; *Taylor* v. *Robinson*, 14 Cal. 401; and *Beals* v. *Allen*, 18 Johns. 363.

He also argued that the receipt taken from Donahoe, Ralston & Co. limited the use to be made of the money by the Board of Supervisors to the erection of county buildings, and thus deprived the Board of the power of using it also to pay the expenses of removal, as required by the Act, and that this was a violation of the law.

Upon the point of a strict compliance with conditions precedent, he cited 9 Wend. 227; 8 Cowen, 13; 1 Hill, 512; 19 Johnson, 69; and 6 Cowen, 627.

By the Court, CURREY, C. J. :

The County of Calaveras by its Board of Supervisors made and filed a petition for a mandamus to be directed to S. W. Brockway, District Judge of the Eleventh Judicial District, which includes said county, and the following named officers of said county, to wit: James Barclay, County Judge; George C. Tryon, Sheriff; William E. Dakin, County Clerk; and Charles Faville, County Treasurer, commanding the District Judge to hold the District Court for said county, and the County Judge to hold the County Court of said county at the Town of San Andreas, in said county, and also commanding the other several county officers named to hold and keep their respective offices at said Town of San Andreas.

On the 8th of April, 1863, the Legislature passed an Act entitled "An Act to submit the question of the removal of the county seat of Calaveras County to the qualified voters thereof." This Act provided that on the fourth Monday of May following, the qualified voters of the county might vote upon the question of the locality and the establishing of the county seat, and determine by a majority of all the votes cast on the question, whether the county seat should be and remain at Mokelumne Hill, which was then the county seat of the county, or should be removed to the Town of San Andreas; and that if it should appear from the returns of the election that the Town of San Andreas received a majority of all the votes cast on the subject, then that town should be and remain the county seat of the county. The Act further provided that upon such a result, the Board of Supervisors of the county, or a majority of them, should within six months thereafter make the necessary provisions for the removal of all books, papers, furniture and other movable property of the county, to the Town of San Andreas, and should secure suitable buildings and offices in which to transact the business of the county; and that after that date, all officers required by law to reside at the county seat, should reside and keep their

offices at the Town of San Andreas; provided, that the citizens of San Andreas would, on or before the election provided for in the Act, contribute the sum of fifteen thousand dollars in gold or silver coin, and deposit the same with some responsible banking firm, to be named by the Board or a majority of them, in defraying the expenses of the removal of said county seat, and towards the erection of the necessary county buildings at the Town of San Andreas; and, provided further, that responsible parties of the Town of San Andreas should enter into and execute bonds satisfactory to the Board of Supervisors or a majority of them, to provide necessary temporary buildings free of cost or expense to the county for the use of the officers thereof. The Act further provided that if it should appear from the election returns that Mokelumne Hill received the majority of all the votes cast, it should remain the county seat of the county. (Laws 1863, p. 228.)

The petition sets forth that an election was had as provided by the Act, and that the result of it was that of the votes cast at such election a large majority was in favor of locating and establishing the county seat of Calaveras County at the Town of San Andreas, and that this result was duly determined and declared by the Board of Supervisors. It is also alleged by the petition that the conditions stated in the several provisos of the Act set forth were duly performed, and that each of the officers named had been notified that the Town of San Andreas was the county seat of the county; and that the Judges had been required to hold their respective Courts at such town, and that the other officers had been required to keep their offices there, but that notwithstanding each of them had refused to comply with such request. The petitioners then pray that an alternative writ of mandamus may issue, etc. This writ was issued and the respondents appeared and answered, showing as cause why a writ of peremptory mandamus should not be issued:

1. It is denied that the sum of fifteen thousand dollars in gold or silver coin was contributed or deposited as required by the Act of April, 1863.

2. It is denied that the banking firm with which it is alleged in the petition the money was deposited, was named by the Board of Supervisors, or a majority of them, as the firm with which the money should be deposited ; but it is averred that the Board named another banking firm for the purpose, and that the order to such effect was entered in the minutes of the proceedings of the Board ; and further, that the money never was deposited with the banking firm named.

3. It is admitted that responsible residents of the Town of San Andreas had executed bonds in the sum specified in the petition, which was satisfactory to the Board of Supervisors, or a majority of them, to provide necessary temporary buildings, free of cost or expense, to the county, for the use of the officials thereof; but it is then alleged that such buildings have not been provided free of cost or expense to the county —and in connection therewith it is averred that the bonds executed were null and void, because the same do not comply with the provisions of the Act passed in April, 1863 ; but it is not stated wherein they fail to comply with the provisions of the Act.

4. It is admitted that on the second Monday after the election the Board of Supervisors proceeded " to open the returns and estimate a portion, but not all of the vote of said county, for and against the propositions referred to in the plaintiffs' petition, and did then and there adjudge and declare the result of said election to be as stated in said plaintiffs' petition, and did also declare that San Andreas had received the largest number of votes cast in said county at said special election for county seat, and that said declarations were entered by the Clerk of said Board upon its records. But said defendants aver that said estimate so made by said Board of Supervisors of the vote cast, and the declaration and adjudication by said Board so made, was false and fraudulent, and in fraud of the returns and the rights of the voters of said county. That the entry of said adjudication and declaration, as aforesaid, by the Clerk of said Board upon the records of said Board, was and is fraudulent, and in fraud of the returns of

said election and the rights of the voters of said county; and that said declaration and adjudication was and is untrue and false in fact."

5. It is denied that the Board of Supervisors did at any time after said election "estimate the entire vote of said county cast at said special election for and against the propositions stated in plaintiffs' petition."

6. It is averred that from the election returns from all the precincts of the county, where polls were legally opened and held at such election, it appeared that the whole number of votes cast in the county was seven thousand nine hundred and one votes, and that of the number of votes so cast Mokelumne Hill received for county seat four thousand and four hundred.

7. It is averred that at the time the petition was filed and when the answer was made, "two suits were pending in the District Court of the Eleventh Judicial District, for the County of Calaveras, involving the same principles and issues raised in this proceeding, and that said suits are now being prosecuted in said District Court, and when terminated will be a final adjudication of the question whether San Andreas or Mokelumne Hill is the county seat of Calaveras County."

By the answer the defendants controvert the power and authority of the Board of Supervisors to open the returns or to estimate the vote cast at the election named, or to declare the result thereof. They also raise the question of the constitutionality of the Act of April, 1863, on the ground that it was submitting to the electors at the polls the exercise of legislative functions.

Another point raised by the answer is in the nature of a demurrer, objecting that the petition does not set forth, nor does it appear therefrom, that of the votes cast for county seat at said election, the Town of San Andreas received a majority, or that it so appears from said returns.

To so much of the answer as is above stated as the fifth and sixth subdivisions of it, the plaintiff has demurred on the ground " that said allegations furnish no defense, wholly or in part, to said petition, and that the same are insufficient for

the reason that, it being alleged in said petition that the Board of Supervisors had canvassed the returns of said election pursuant to law and declared the result thereof, their adjudication cannot be attacked collaterally except for fraud."

The petitioners also have moved the Court to strike out the portions of the answer which are to the effect that the declaration and determination of the Board was untrue and false in fact as to the number of votes given for the location of the county seat ; and also as to the pendency of actions in the District Court of the Eleventh Judicial District, involving, as the defendants allege, the same principles raised in this proceeding.

The objection of the defendants, which is in the nature of a demurrer to the petition, is overruled for the reason that, in our opinion, the petition states facts which if true entitle the petitioners to the remedy and relief which they have sought.

The motion of the petitioners to strike out the portion of the answer relating to the pendency of actions in the District Court, involving, as the defendants allege, the same principles and issues raised in this proceeding, is granted, for the reasons—first, that the writ of mandamus is a high prerogative writ issuing in the name of the sovereign power, to abate or bar which a plea that another action is depending for the same cause, is not available (3 Black. Com. 110 ; Comyn Dig. H. 24) ; second, the answer does not show that the cause of action involved in the actions pending in the District Court are the same as in this proceeding. (Archbold's Civil Pleading, 294, 295). Besides which, it appears that such actions are brought by plaintiffs, who are not the petitioners in this proceeding, and that only three of the defendants in this case are defendants in those actions. (1 Saunders' Pleading and Evidence, 21, 22.)

The motion of the petitioners to strike out the portions of the answer, to the effect that the declaration and determination of the Board was untrue and false in fact as to the number of votes given for the location of the county seat, is denied ; and the petitioners' demurrer to the portion of the

answer before specified is overruled, for the reasons which appear in the subsequent portion of this opinion.

It is contended on the part of the petitioners that the decision and determination of the Board of Supervisors, as a Board of Canvassers, is of the character of a judgment, which cannot be impeached collaterally ; that the only remedy open to the parties aggrieved by its action, if a wrong was done, was under the Act providing for contesting elections. (Laws 1850, p. 106, Sec. 51.) By reference to the fifty-first section of the Act of 1850, to which our attention has been directed by the petitioners' counsel, it will be seen the contesting of an election therein specified relates to the right of any person declared duly elected to an office to be exercised in and for a county. In this case there is not nor could there have been any such contest, because no office is involved.

Assuming, as we think may properly be done, that the Board of Supervisors was the proper authority to canvass the votes cast at the special election respecting the location and establishment of the county seat, and to declare the result of such election, it does not therefore follow that their determination was conclusive, though in the first instance it stands as prima facie evidence that the result was as declared.

In the case of the *People* v. *Van Slyck*, 4 Cow. 297, an information in the nature of a *quo warranto* was filed against the defendant charging him with having intruded into the office of Sheriff, in consequence of the unlawful decision of the County Board of Canvassers in his favor. The Canvassers had convened in pursuance of a statute, and organized as a Board of County Canvassers, and determined that the defendant had received for the office of Sheriff a majority of the votes cast, and it was thereupon determined that he was duly elected. The statute from which the authority was derived provided that, upon the township returns of votes given for members of Assembly and county officers, the Board should proceed to determine what person or persons had, by the greatest number of votes, been duly elected to each of the

43

offices mentioned in such returns (2 N. Y. Rev. Stat. 140, Sec. 10). In argument the counsel for the defendant maintained that when the Board determined that the defendant was elected Sheriff, such determination was judicial in its character and was as binding and conclusive as a judgment in a Court of justice. But in respect to this position, Mr. Justice Woodworth said : " It was contended on the argument that the decision of the Board of Canvassers was conclusive, until reversed ; and could only be reviewed by certiorari. This objection cannot prevail. The duties of the Canvassers are ministerial. They are required by the Act to attend at the Clerk's office, and calculate and ascertain the whole number of votes given at any election, and certify the same to be a true canvass. This is not a judicial act, but merely ministerial. They have no power to controvert the votes of the electors. If they deviate from the directions of the statute, and certify in favor of a Sheriff not elected, he is liable to be ousted by information. The trial is had upon the right of the party holding the office. The certificate is not conclusive. The Court will decide upon an examination of all the facts." This seems to us to be applicable to the case at bar, and, in our judgment, is a sound exposition of the law on the subject. (See also *People* v. *Cook*, 4 Seldon, 70.)

The determination of the Board of Supervisors that the Town of San Andreas had received a majority of all the votes cast is *prima facie* evidence of the fact so determined, but, like all other *prima facie* evidence, it must be regarded as open to contradiction ; and if the fact be otherwise than as determined by the Board, it would be an unjust denial of the rights of the electors of the county to shut the door against all remedy for the redress of the wrong. If San Andreas was elected, and· thereby established as the county seat of Calaveras County, it was by the expressed will of a majority of the electors who voted, and not by the determination or certificate of the Board of Supervisors. If a false estimate of the number of votes cast for the respective places was made and announced by the Board, whether intentionally or otherwise, justice demands.

that the injured party or portion of the citizens of the county should have the opportunity of making it manifest, and of having the true result ascertained and determined.

The objection of the defendants that the petitioners are not without a speedy and adequate remedy other than by mandamus cannot prevail. In our judgment, the proceeding by mandamus is the only adequate and effective remedy open to the petitioners.

As the case stands upon the issues joined it is necessary before we can proceed to render a final judgment, that a trial of such issues should be had before a jury or before some Court competent to hear and determine the facts concerning which the parties are at issue. We therefore order and direct the case to be referred to the District Court of the Sixth Judicial District in and for the County of Sacramento, to try the case before a jury, or without a jury if the parties so agree, and to render and return to this Court at the earliest practicable day a special verdict of the jury that may be impanelled and sworn to try the issues submitted to them, or the special finding of the Court on such issues, in case a jury trial thereof shall be waived by the parties. The issues to be tried and found by the Court or jury shall be as follows :

First—Did the citizens of San Andreas in the County of Calaveras contribute the sum of fifteen thousand dollars in gold or silver coin, and deposit the same with some responsible banking firm named by the Board of Supervisors of the county, as a fund to be used by said Board of Supervisors, or a majority of them, in defraying the expenses of the removal of the county seat, and toward the erection of the necessary county buildings at the Town of San Andreas ? and if the finding or verdict be in the affirmative to the above, then at what date was such money contributed, and with what banking firm was it deposited, and by what mode was such banking firm designated ?

Second—What number of votes was cast by the qualified electors of Calaveras County at the special election held under the Act of the Legislature of the State of California,

entitled " An Act to submit the question of the removal of the county seat of Calaveras County to the qualified voters thereof," approved April 8th, 1863 ? and of the number of votes so cast, what number of them was for " Mókelumne Hill " for county seat, and what number was for " San Andreas " for county seat ?  And it is further ordered that a copy of this opinion and order be made and certified by the Clerk of this Court, and that the same be filed in the office of the Clerk of the District Court to which the above issues are referred to be tried.

After the return of the findings from the District Court, and on motion of both parties for judgment thereon, the following opinion was delivered.

By the Court, RHODES, J. :

It is proper, in approaching the questions to be determined in this case, to have a correct idea as to who are the parties to the action, for we may thus be materially assisted in the determination of most of the points presented.  One of the counsel professes to appear for the Town of Mokelumne Hill as a defendant to the action, but this is erroneous.  Neither that town nor its citizens are parties to the suit, nor are they, in legal contemplation, any more interested in the results of the controversy than are the citizens of any other portion of the county.  The suit is brought against the District Judge and certain of the county officers of Calaveras County, by the county in its aggregate—its *quasi* corporate—capacity.  The people, represented in the matter by the Board of Supervisors, are the real plaintiffs in the action.

The questions to be considered all relate to the fund of fifteen thousand dollars, required by section two of the Act to be raised by the citizens of San Andreas ; no question being made in respect to the correctness of the finding of the jury, that a majority of the votes were cast in favor of San Andreas. Both parties move for judgment on the verdict.  The defend-

ants insist that the verdict is not sufficient to entitle the plaintiff to judgment, because it shows: 1st—that the money was not deposited with a banking firm designated by the Board of Supervisors; 2d—that the use of the fund was limited by the citizens of San Andreas to the erection of county buildings; and 3d—that the money was so deposited that no control over it was vested in the Board of Supervisors.

The citizens of San Andreas contributed the money to constitute the fund, and then the duty devolved upon the Board of Supervisors to name some responsible banking firm with whom it was to be deposited; and in proceeding to execute that duty they named a firm that refused to receive it. The fault was theirs, not that of those who had contributed the money. It was incumbent on the Board to designate a banking firm that would receive the money on deposit, and the contributors were not required to ascertain whether the firm named would receive it, and much less was it their duty to go in search of another banking firm who would receive it, and who would be acceptable to the Board. It could not, with any plausibility, be contended that if every banking firm in the State had, on the application of the Board, refused to receive the deposit, the Act providing for the election would have become null and void of effect; nor can the same thing be claimed because the only firm named refused to receive the money. The finding shows an offer to perform on the part of the citizens of San Andreas, and that satisfies all the requirements of the law in respect to the particular place of deposit. Besides this, the Board, by their order of the 19th of February, 1864, ratified the selection of the banking firm by the contributors of the money, and made it, in effect, their own act.

The second objection is untenable. The citizens of San Andreas raised the fund required by the Act, and upon their depositing it, or offering to deposit it, they had no further power or control over it, in case the election resulted favorably to San Andreas. They had neither the right nor the power to designate the purpose to which it should be applied.

The Act declares it to be a fund to be used by the Board for the purposes therein specified, and not a fund to be expended as the contributors should direct. By contributing the money and offering to deposit it with the banking firm named, they manifested the purpose for which the fund was raised—that is, to constitute a fund to be used according to the provisions of the Act.

There is nothing in the verdict, as we understand it, to support the third objection. The contributors were not required to deposit the fund in the name of the Board, but it was sufficient if it was so deposited, that the Board could use it for the purposes contemplated in the Act. This the Board could do, under the terms of the receipt given by the bankers, when the county seat should be located at San Andreas. It was so located, when it appeared "from the returns of said election that the Town of San Andreas has received a majority of all the votes cast for the county seat." The location is a very different thing from the removal of the books, papers, etc., for which the Board are by the same section (section two) directed to make provision. When the banking firm should be notified of such removal—and there is nothing improper in requiring the Clerk to give the notice—the Board would be entitled to the money, and they were not entitled to it before that time.

Another view may be taken of the case. It was intended by the Legislature, to give the citizens of that county the power to determine at which of the two towns the county seat should be located, and in order that all the expenses of the removal of the county seat to San Andreas, if the removal should be determined upon, should not become a county charge, it was provided that the town should contribute fifteen thousand dollars for that purpose, and the election was not authorized unless that sum was raised, and deposited so as to be subject to the control of the Board of Supervisors for that purpose. That was the substance of the condition to be performed on the part of San Andreas in respect to the money, and all else was merely a matter of form and not of substance.

The primary rule in the construction of statutes is to so read them as to give force and effect to the intent of the Legislature; and when the object of the Act is to subserve some purpose, in which the public are interested, Courts will hold a provision to be mandatory or directory as will best subserve that purpose, if it will reasonably bear such construction. (See Smith's Com., Sec. 670 and following, and cases cited.) Reading the first provision of section two, according to the rule as contended for by the defendants, and holding every provision mandatory, we will arrive at this result: If any one but a citizen of San Andreas should assist in making up the fifteen thousand dollars, or should deposit the fund elsewhere than with a banking firm, or if the Board should neglect or refuse to name the firm, or if the firm named should refuse to accept the fund on deposit, the Act would fail, and the citizens be deprived of the privilege of selecting their county seat. But there can be no question that if the fund was contributed by or on behalf of the citizens of San Andreas, and was by them offered to be deposited prior to the election with the banking firm named by the Board, those acts amounted to a compliance on their part with all the provisions that are mandatory as to them.

A still further view is that the plaintiff—the people of the county in their *quasi* corporate capacity—the only persons interested in the question of the location of the county seat, say in the petition that the citizens of San Andreas have literally complied with all the terms and conditions of the Act to be kept and performed on their part; and as those provisions were inserted for the purpose of relieving the county from a certain portion of the expenses incident to the removal of the county seat, if the county is enabled to control the fund and waives a strict compliance with the *letter* of the statute on the part of the citizens of San Andreas, no one is authorized to raise the objection for the county and insist on a more strict compliance with the terms of the Act.

Ordered, that the peremptory writ of mandate issue, as prayed for in the petition.