## HULL vs. WINNEBAGO COUNTY.

*January 18 — February 7, 1882.*

COUNTY BOARD: *When it may determine salary of county treasurer.*

Ch. 75, Laws of 1867 (Tay. Stats., ch. 13, § 62), gave the county board of supervisors power, "at the annual meeting in November," to determine the amount of the annual salary that should be received by the county treasurer who was to be elected in the county "during the ensuing year." *Held,* that the board might determine such amount at an *adjourned* session of such annual meeting, though held so late as March of the subsequent year, and that the salary of the treasurer elected at the following fall election would be limited by such determination.

---

Hull vs. Winnebago County.

---

APPEAL from the Circuit Court for *Winnebago* County.

The county board of supervisors of Winnebago county having rejected plaintiff's claim to be paid a certain sum as a balance due him on his salary as treasurer of said county during the years 1879 and 1880, he appealed to the circuit court; and from a judgment there in favor of the defendant county, he appealed to this court.

The grounds of the plaintiff's claim will sufficiently appear from the opinion.

For the appellant there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*.

*Geo. W. Burnell*, for the respondent.

COLE, C. J.   The facts upon which the question of law arises in this case, are these: The plaintiff was elected county treasurer in November, 1878, and entered upon the duties of his office on the first Monday of January following.   The annual salary of his immediate predecessor, as fixed by the county board, was $1,400.   The annual session of the county board which began November 13, 1877, was continued until the 28th of that month, when it was adjourned to the 8th of January, 1878.   After a session of three days in January, it was again adjourned to the 12th day of March, 1878, when the annual salary of the county treasurer was fixed at $1,100, which has been paid the plaintiff.   The whole contention is, whether the county board, at its adjourned session in March, 1878, had power to fix the salary of the county treasurer who was to be chosen at the general election in November following.

The statute which regulated or restricted the power of the county board in the matter was chapter 75, Laws of 1867.   See 1 Tay. Stats., ch. 13, § 62.   The first section of that chapter reads as follows: "At the annual meeting in November, in every year hereafter, the county board of supervisors for the several counties shall fix and determine the amount of the annual salary that shall be received by each and every county

officer who is to be elected in their respective counties during the ensuing year, and whose annual salary said supervisors have now or may hereafter have authority to establish." In case the county board failed to establish the salary of any county officer as provided for in the act, then such officer was to receive the same annual salary as that received by his immediate predecessor in office. Section 3.

Now, the learned counsel for the plaintiff contends that the action of the board fixing the annual salary of the treasurer at $1,100 in March, was wholly inoperative so far as his client is concerned, who, he says, is entitled to the salary of his immediate predecessor in office. He claims this for two reasons, or upon two grounds: *first*, because the change was not made in the month of November, 1877, as the statute contemplates; and *second*, because, if a change could be made at any time during the November session of the board, such change could only apply to or affect the salaries of officers who should be elected during the next ensuing year after the change was made. On the other hand, the learned counsel for the county insists that the power of the board to fix the salary was not limited by the statute to the precise month of November, but that the board had authority to fix the salary at any adjourned meeting of the annual session which began in November.

We are inclined to adopt the latter view of the statute as being the correct one. It is certainly true that the statute is not expressed in the most apt and concise words; but still there is no difficulty in arriving at its true intent and meaning. That intent obviously was to give the county boards the power to determine the amount of salaries of county officers. It is quite clear that the statute contemplates that the power shall be exercised at a period remote from the time when such officers were to be chosen, in order to prevent the influence of partisan bias or personal feeling on the part of members of the board in fixing the salary. And, furthermore, it was probably deemed desirable that candidates for office should

know precisely what compensation was attached to the office. Hence the statute provided that the board should fix, at its annual meeting, the amount of annual salary which each county officer should receive. It is said that there was but one annual meeting of the board, which, by law, was to take place in November; consequently the words "in November" plainly imply that the power was to be exercised in that month and at no other time. But the words "in November," we think, were inserted out of abundant caution, to designate the session at which the board should act in the matter. The correctness of this view will be more apparent when one remembers that by section 26, ch. 538, Laws of 1865, the board was required "to meet annually on the second Monday of July," to equalize property assessed for taxation; also, by section 7, ch. 130, Laws of 1868, it was required "to meet annually on the fourth Monday of May" to perform this duty. Therefore, "the annual session in November" was designated as the one at which salaries were to be fixed, in order to distinguish it from the other "annual meeting" of the board. And hence the board was required to fix the salary some time during the November session. This it did do in the present case. The annual meeting was continued by regular adjournments to March, when action was taken and the salary fixed.

But it is further insisted by plaintiff's counsel, that, even if the board had power to change the salary at any time during its annual session, such change could not apply to an officer elected the same calendar year. It is said that the words "ensuing year" in the sentence have reference to the officer to be elected, and mean one who is chosen the next year after the salary is fixed. We must presume the legislature enacted the statute in view of the notorious fact that the entire business of county boards was usually completed in a few weeks; generally before the close of the year. This accounts for the language used in the statute. But if for any reason the annual session was continued until after the first of January, the

board might change the salary at an adjourned meeting, and have the change apply to officers chosen at the following fall election. We do not think this construction does violence to the statute. At one time the board had power to fix the salary of the county treasurer after his election and before the commencement of his term of office. Chapter 220, Laws of 1863. The plaintiff, long before his election, had full notice what his salary was to be. He accepted the position with full knowledge on his part of what compensation was attached to the office, and no wrong has been done him. And we fully agree with the counsel for the county that the spirit of the statute was complied with by the board when it changed the salary in March.

*By the Court.*— The judgment of the circuit court is affirmed.