FEAVEL and others, Respondents, vs. CITY OF APPLETON and others, Appellants.

*February 16—May 7, 1940.*

484

*Harry P. Hoeffel* of Appleton, for the appellants.

For the respondents there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Alfred C. Bosser.*

NELSON, J. The action was brought under sec. 269.56, Stats.,—the Declaratory Judgments Act,—for the purpose

of having determined whether the plaintiffs, as aldermen of the city of Appleton, should be paid salaries at the rate of $500 per annum, or $250 per annum. It was agreed by the parties that the allegations of the complaint and certain additional allegations of the answer, should be taken as true and should constitute the stipulated facts. So many of those facts as are relevant to the questions of law presented, will be briefly summarized. In the year 1937, the common council of the city of Appleton enacted an ordinance fixing the salaries of aldermen at $500 per annum. At that time the city of Appleton was divided into six wards, and the common council was composed of two aldermen from each ward. Thereafter, an ordinance, apparently adopted by a two-thirds vote of all the members of the common council was approved by the electors at the general election held in the spring of 1938. That ordinance provided, that effective in the year 1939, there should be eighteen wards in the city of Appleton, and that each ward should be represented by one alderman; that one half of the aldermen should be elected for terms of one year and that the other half should be elected for terms of two years. The common council, at its first regular meeting in February, 1939, did not fix or change the salaries of aldermen whose terms were to commence during the ensuing year. On February 15, 1939, a petition, signed by the electors of said city equal in number to fifteen per cent of the votes cast in said city for governor at the last general election, and an ordinance, was filed with the city clerk. In the petition it was requested that the common council adopt the proposed ordinance without alteration, or refer it without alteration, to a vote of the electors. The material part of the ordinance provided:

" 'The salaries of the aldermen of Appleton, Wisconsin, shall hereafter be changed from the sum of $500 a year per alderman as provided in section 3:32 of chapter III of the general ordinances of the city of Appleton, Wisconsin, as amended, to the sum of $250 a year per alderman.' "

The city clerk promptly determined that the petition was sufficient and certified it to the common council on February 15, 1939. On March 15, 1939, it was resolved by the common council that the proposed ordinance be not adopted but that it be submitted to the electors of the city at the next regular election to be held on the first Tuesday in April, 1939. The ordinance was thereafter submitted to the electors at said election and 5,960 persons voted in favor of its adoption and 2,261 persons voted against its adoption. At that same election, all of the plaintiffs were duly elected aldermen and thereafter duly qualified as such officers. On May 17, 1939, the common council unanimously resolved and ordered that the defendants, Carl J. Becher, clerk and comptroller, and Joseph Kox, treasurer, be required to make payment of salaries to the plaintiffs monthly at the rate of $500 per annum. Becher and Kox, as such officers, however, refused to pay the salaries to the plaintiffs as ordered by the common council. All parties agreed that the controversy is one which properly should be determined under the Declaratory Judgments Act.

The several statutes which must be construed are as follows:

Sec. 62.09 (6), Stats. 1937. *"Compensation.* (a) Salaries shall be paid the mayor or aldermen *only* when ordered by a vote of three fourths of all the members of the council. Salaries heretofore established shall so remain until changed by ordinance.

"(b) Whenever such salaries are to be *changed* or established the council shall, *not later than the first regular meeting in February,* fix the amount of salary of each officer entitled to a salary who may be elected or appointed for a definite term during the ensuing year. The salary of an officer so appointed or elected shall not be increased or diminished during his term of office. . . ."

Sec. 10.43, Stats. 1937, so far as here material, provides:

"(1) A petition signed by electors of any city equal in number to not less than fifteen per cent of the vote cast

therein for governor at the last general election may be filed with the city clerk requesting that a proposed ordinance or resolution annexed thereto either be adopted without alteration by the common council of said city or be referred without alteration to a vote of the electors thereof."

"(2)" (Forbids the circulation of the petition by any member of the common council, etc.)

"(3)" (Requires the city clerk to determine the sufficiency of the petition, etc., and if sufficient, to certify it to the council.)

"(4) Such proposed ordinance or resolution shall thereupon either be passed without alteration by said common council within the thirty days next following the date of the clerk's final certificate, or it shall be submitted without alteration by said council to the electors of the city at the next regular election, if one be held not less than forty days after such date, otherwise at the next succeeding regular election; but the council may by a three-fourths vote of the members-elect order it submitted at a special election called for that purpose at any time prior to said next succeeding regular election. But not more than one such special election shall be called in any period of six months."

Sec. 62.09 (6) (b), *supra,* was in substance first enacted in 1889. Sec. 30, ch. 326, Laws of 1889. It has been amended by the legislature numerous times since its enactment but never changed materially. In *Smith v. Phillips,* 174 Wis. 54, 56, 182 N. W. 338, sec. 62.09 (6) (b), was construed and its purpose declared. It was there said:

"The terms of this statute are positive and indicate that the legislature intended that the common council of cities are required to fix the salaries of city officers at this first regular meeting in February. Manifestly it was considered the best municipal policy to remove the question of compensation of city officers from the influence of the municipal election which follows early in April. This idea of freeing the salary question from municipal political influence is also guarded by forbidding any increase or diminution of such fixed salary during the term of any such officer. We are of the opinion that the circuit court correctly held that the terms of this statute are mandatory; and require city councils to fix the

amount of the official municipal salaries at the regular meeting in February."

A similar statute, sec. 59.15 (1), Stats. 1937, which relates to the fixing of salaries of county officers by county boards, in part, provides:

"The county board at its annual meeting shall fix the annual salary for each county officer, including county judge, to be elected during the ensuing year and who will be entitled to receive a salary payable out of the county treasury. The salary so fixed shall not be increased or diminished during the officer's term."

The substance of that statute was adopted at a very early date. Ch. 75, Laws of 1867. The public policy declared in that statute is obviously similar to that declared in sec. 62.09 (6) (b). It too has been construed by this court. In *Hull v. Winnebago County,* 54 Wis. 291, 293, 11 N. W. 486, it was said:

"It is quite clear that the statute contemplates that the power shall be exercised at *a period remote from the time when such officers were to be chosen, in order to prevent the influence of partisan bias or personal feeling on the part of members of the board in fixing the salary. And, furthermore, it was probably deemed desirable that candidates for office should know precisely what compensation was attached to the office.* Hence the statute provided that the board should fix, at its annual meeting, the amount of annual salary which each county officer should receive."

In *State ex rel. Banks v. McClure,* 91 Wis. 313, 315, 316, 64 N. W. 992, it was said:

"It is very apparent by the terms of sec. 694, R. S. [substantially the same as 59.15 (1)] that the legislature intended to make an harmonious general law, by which the salaries of all salaried county officers should be fixed before their election, doubtless for the purpose of removing from the question personal and political feelings, and of informing a candidate for office what the salary of that office was to be.

*Hull v. Winnebago County,* 54 Wis. 291. It is equally apparent that both of these objects are desirable objects. . . .

"We construe the two statutes [sec. 694 and sec. 694*a*] as meaning that the sheriff, after he has become a salaried officer, is entitled to know before his election what salary he is to receive, and after his election is secure from change in his salary, as well as other county officials."

It was held in *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143 N. W. 153, that the common council of the city of Tomahawk had the authority to fix the salary attached to a new office which had been created by an ordinance adopted by the electors pursuant to the provisions of sec. 39*j*, Stats. (now sec. 10.43), at a time other than at its first regular meeting in February. That holding was obviously a necessary and reasonable one under the circumstances there existing since the ordinance was approved by the electors on April 2, 1912, the officer was appointed on June 4, 1912, and the ordinance made no provision for the salary to be paid. The office there considered was not in existence at the time of the first regular meeting of the common council in February of the preceding year and so obviously the common council at that time could not have fixed a salary for that office. In that case it was said (p. 486) :

"Doubtless under the mandatory provision of the city charter as to situations contemplated by it,—that is, *existing offices to be filled during the year subsequent to the first regular meeting in February,*—the power of the common council, as to fixing salaries, is limited to exercise at such meeting."

That language lends support to the contention that the council may not change salaries of existing offices that are to be filled during the ensuing year at a time later than its first regular meeting in February.

This controversy presents questions which have not been easy to determine. For many years prior to the original enactment of sec. 10.43, Stats., in 1911, ch. 513, Laws of

1911, it was the strongly declared public policy of this state, (1) that salaries should be paid to the mayor or aldermen only when ordered by a vote of *three fourths of all members of the common council* (sec. 62.09 (6) (a)); (2) that such salaries when so fixed should continue until changed by ordinance (sec. 62.09 (6) (a)); (3) that such salaries should be changed not later than the first regular meeting of the common council in February preceding an election (sec. 62.09 (6) (b)); (4) that the salary of every officer entitled to a salary should be fixed by the common council prior to his election or appointment (sec. 62.09 (6) (b)); and (5) that the salary of an officer so appointed or elected should not be increased or diminished during his term of office. A similar public policy as to county officers was likewise declared in a statute similar to sec. 62.09 (6) (b). The statutes declaring such public policy as to both city and county officers were construed by this court and their obvious purposes were stated to be: (1) To remove questions of compensation of officers from the influence of partisan elections; (2) to inform a candidate in advance of his election as to the precise salary he would receive.

What effect, if any, the legislature intended sec. 10.43, Stats., should have upon sec. 62.09 (6) is, to say the least, shrouded in grave doubt.

(1) Did the legislature intend that salaries of city officers, particularly those of aldermen, might be changed by initiative and referendum procedure? At the time that sec. 10.43, Stats., was enacted, sec. 62.09 (6) (a) clearly provided that "salaries shall be paid the mayor or aldermen *only* when ordered by a vote of *three fourths of all the members* of the council." Sec. 10.43 is general in its terms and contains no reference to sec. 62.09 (6) (a).

(2) Did the legislature, in enacting sec. 10.43, Stats., intend to provide that not less than fifteen per cent of the electors (based upon the vote cast in a city for governor at

the last general election) might petition the common council to pass without alteration an ordinance submitted to it providing for the payment or nonpayment of salaries to the mayor and aldermen, and that such a proposed ordinance might be adopted by a majority vote only of the common council? If so, then salaries might be ordered to be paid to the mayor and aldermen of a city in pursuance of an ordinance adopted upon the petition of but fifteen per cent of the electors who voted for governor at the last preceding general election and the vote of a bare majority of the common council, contrary to the provisions of sec. 62.09 (6) (a).

(3) Did the legislature, in enacting sec. 10.43, Stats., intend to provide that salaries of city officers might be changed by not less than fifteen per cent of the electors petitioning the council to pass such an ordinance and thereafter having it passed by a majority of the common council? Did the legislature intend that such a petition and ordinance might be presented to the common council at a time subsequent to its first regular meeting in February and have it adopted by the council on the very eve of an election at which the officers, whose salaries were involved, were to be elected, in view of the fact that sec. 62.09 (6) (b) provided that salaries could not be changed by the common council later than the first regular meeting in February?

(4) Did the legislature intend to provide that salaries of either appointive or elective officers might be increased or diminished during the terms for which they are appointed or elected by means of the initiative and referendum provisions of sec. 10.43, Stats.? Obviously, if sec. 10.43 is as broad, general, and all-embracing and with no implied exceptions, as is contended by the defendants, then it would be permissible, by pursuing the procedure under sec. 10.43, to accomplish that result.

(5) Did the legislature intend, when it enacted sec. 10.43, Stats., that in case the common council refused to pass with-

out alteration a salary ordinance submitted to it and referred it to the electors, that it might be approved by the electors and become immediately applicable to officers elected at the same election? If so, then the public policy expressed in sec. 62.09 (6) (b) was ignored.

The electors, upon such a referendum as is provided by sec. 10.43, Stats., exercise only such legislative power or authority as is conferred upon the common council. They are permitted to vote upon a proposed ordinance or resolution only when the common council is duly authorized to pass it and has failed or refused to adopt it. This would seem clearly to imply that if the common council is without authority to fix or change salaries of city officers at a given time, the electors upon a referendum may not do so.

After having given this controversy extended consideration, we conclude that the legislature did not intend to permit the electors to do what the council was prohibited from doing; that the legislature did not intend to overrule the public policy declared in sec. 62.09 (6), Stats.; that, since the council was expressly forbidden to fix or change salaries later than the first regular meeting in February, the legislature did not intend to permit the council to adopt a salary ordinance at some later date, say, on the very eve of an election, upon a petition being presented to it, signed by not less than fifteen per cent of the electors; that, assuming that salaries may be fixed or changed by the initiative and referendum process, such process should be exercised and completed prior to the election at which the officers, whose salaries are changed, are to be elected. While the matter is not entirely free from doubt because of the conflict between the specific provisions applicable to the common council and the general provisions found in sec. 10.43, it is our opinion that the legislature did not intend thereby to confer power upon the electors which was denied to the common council. If we are wrong in so concluding, the legislature may amend the

applicable laws in such manner as to leave no doubt as to its intentions.

The contention that in the event a common council at its first meeting in February enacts an ordinance which fixes an excessively high salary for a city officer for an ensuing term, the people of a city would be without remedy, if sec. 10.43, Stats., cannot be immediately invoked, is not persuasive. Councils are not apt so flagrantly to ignore the public, whose chosen representatives they are.

While it appears that the electors of the city of Appleton who voted at the election were in favor of reducing the salaries of aldermen from $500 to $250 per annum, the ordinance, in our opinion, was not presented to the council at a time when it might lawfully change salaries, and therefore no change of salaries, applicable to the plaintiffs, who were elected aldermen at the same election, was effected. The importance of the principles underlying laws similar to sec. 62.09 (6) (b), Stats., greatly outweigh the temporary hardship cast upon the city of Appleton in being required to pay its aldermen larger salaries than the electors think they should receive.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I cannot agree with the decision of the court in the instant case. The city clerk filed his certificate of the sufficiency of the petition on February 15th. This was more than forty days preceding the April election. Under sec. 10.43 (4), Stats., the council was required to pass the ordinance or submit the ordinance to the electors at that election. They submitted the ordinance, the majority of the electors voted for its adoption, and thereby the salaries of the plaintiff aldermen were fixed at $250 per year. Sec. 10.43, Stats., is quoted in the opinion of the court.

The fixing of the salaries of city officers is within the purview of that section. The coverage of that statute is in no

way limited by its terms. It would seem, *a priori,* that the coverage includes any sort of an ordinance of a legislative nature which the city may adopt, and that it therefore covers an ordinance fixing salaries. It is stated in 2 Lewis' Sutherland, Statutory Construction (2d ed.), § 705, that "where the legislature has made no exception the courts of justice can make none." Sec. 10.43, Stats., contains no exceptions of subjects to which it applies. It therefore applies to all subjects upon which cities may legislate.

The only case called to the attention of the court that bears directly on this question is *State ex rel. Leo v. Tacoma,* 184 Wash. 160, 49 Pac. (2d) 1113. It was there held under a statute for direct legislation similar to sec. 10.43, Wis. Stats., that salaries of city officers might be fixed by such legislation.

It was held in *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143 N. W. 153, that sec. 10.43, Stats., authorized the creation of an office pursuant to its provisions. It would seem that the fixing of a salary of an officer is no more subject to exclusion from the purview of the statute than the creation of an office, and that if an office may be created under the statute the compensation of an officer may be fixed under it.

It therefore seems to me that sec. 10.43, Stats., authorizes salaries to be fixed by direct legislation. As I understand the majority opinion, the court agrees with this but holds that the authorization exists only unless the council takes action to pass the ordinance at its first regular meeting in February or then refuses to pass it and submits it to the electors. With this I cannot agree.

To require the action of the council to be taken at its first regular meeting in February entirely prevents the fixing of salaries under sec. 10.43, Stats. The opinion of the court, in effect, limits the filing of a petition so that the council may take its action on a single day, and that day must be just thirty days before the clerk files his certificate. The

clerk has fifteen days in which to file his certificate. He may file it on any one of fifteen days, and the day he will file it cannot be determined until he does file it. The council may take thirty days in which to act on the ordinance. If a council does as it did in the instant case—takes its full time—the filing of the petition can never be so timed as to permit action at the February meeting. The statute places no restrictions upon the time when a petition may be filed. The only restriction as to time relates to when the election shall be held if the council does not pass the ordinance. As the statute does not fix a definite time for the filing, the court cannot fix one.

The court's view that the action of the council must be taken at the first meeting in February is based on the provisions of sec. 62.09 (6) (b), Stats., quoted in the majority opinion, and what the court has heretofore said in considering that statute. But all these statements were made long before sec. 10.43 was enacted and said without thought of direct legislation. The two sections, 10.43 and 62.09 (6) (b), provide two distinct methods for fixing salaries of city officers, one by direct legislation, that is by referendum, and the other by action of the common council alone. The one provides that they may be changed by an ordinance initiated by a petition signed by the electors and adopted by electors, the other that they may be fixed by an ordinance enacted by the council. When two distinct statutory methods are provided for accomplishing the same thing, each statute applies to the proceeding under that statute, and neither applies to the proceeding under the other. Thus, a city in providing for acquisition of a public utility may proceed under sec. 66.06 (8), Stats., to acquire an existing utility by contract with the utility at a price agreed upon between the city and the utility, or under ch. 197, Stats., at a valuation determined by the public service commission. The statutes relating to the one method of acquisition apply to that method and to that method only. No one would con-

tend otherwise. So here. The statute requiring a city council to change salaries not later than the regular meeting in February applies only to a change adopted by the council itself. It has no application to a change adopted by the people.

It is stated in a recent English work, Crane on Construction of Statutes, page 312, that where a new act is couched in general affirmative language and a previous law can well stand with it both statutes stand. Sec. 10.43, Stats., was not in existence when the statute, now sec. 62.09 (6) (b), was enacted. Both are in affirmative language. By limiting each statute to the matter to which it applied when enacted, and to which each by its terms inferentially applies, the one to fixing salaries by the council of its own motion and the other to the fixing of salaries by direct legislation, both may stand and be enforced. I think the statutes here involved should be so limited and that each applies to the matter with which it deals.

If the council instead of submitting the ordinance to the people had passed the ordinance, I could see some reason in holding that the ordinance if passed by the council had to be passed at the first regular February meeting. The ordinance would then have been enacted by the council and due deference to sec. 62.09 (6) (b), Stats., not unreasonably requires that it be passed at the time therein prescribed. But the council had nothing to do with the enactment of the ordinance. It was enacted by the people. And the only restriction placed upon the people's adoption of it is that the election shall be held not less than forty days after the filing of the certification of sufficiency of the petition.

The opinion of the court states: "It is our opinion that the legislature did not intend thereby [by the enactment of sec. 10.43] to confer power upon the electors which was denied to the common council." I take it that nobody would contend that it did so intend. But the question is not one of power. It is one of when power shall be exercised. The purpose of requiring the council to fix salaries at the Febru-

ary meeting is that the officers to be elected will know previous to their election what their salaries shall be. They knew in the instant case on February 15th that their salaries would be either $500 or $250. That is definite enough to subserve all purposes of the statute requiring the council to fix salaries at the first meeting in February. It prevented the outgoing council either from increasing or diminishing the salaries for the ensuing term after the nomination of the officers to be elected at the April election, or after their election and before the commencement of the term. And as for the time element involved, there is no material difference between the forty days prior to the April election prescribed by the direct-legislation statute and the time between the first meeting in February and the April election, which is always around sixty days. The legislature may as reasonably prescribe forty days in the one statute as about sixty in the other.

The trial court considered that the language of the proposed ordinance that the salaries of aldermen "shall hereafter be changed" renders the ordinance inoperative, because it does not say what it manifestly means, which is that the salaries "shall hereafter be." This seems sufficiently covered by the *Kelly Case, supra*. The ordinance there named the office created by the direct legislation as superintendent of trade and commerce. The tickets voted at the election named the office as chamber of commerce. The court held that as the electors knew what they were voting for the ordinance was duly enacted. So here. As the electors knew that they were voting to change the salary of aldermen from $500 to $250, the salary by their vote was so changed. The intent of the ordinance is plain enough, and it should be given force according to its plan intent.

For the reasons above given I think the judgment of the municipal court should be reversed with directions to enter judgment establishing the salaries involved at $250 a year.

I am authorized to state that Mr. Justice FRITZ concurs in this opinion.