[S. F. No. 17209. In Bank. Nov. 22, 1946.]

HARRY W. PULCIFER et al., Appellants, v. COUNTY OF ALAMEDA et al., Respondents.

J. Paul St. Sure and Edward H. Moore for Appellants.

Robert W. Kenny, Attorney General, James H. Oakley, Assistant Attorney General, Robert E. Reed, Deputy Attorney General, and Charles W. Johnson, Deputy Director, Department of Justice, for Respondents.

GIBSON, C. J.—The petitioners, justices of the peace of Alameda County and the personal representatives of a deceased justice, seek to compel respondents to pay salaries at the increased rates established by an ordinance adopted May 28, 1942, within six months of the election of such officers. They have appealed from a judgment of dismissal which followed the sustaining of a demurrer to their petition.

This appeal involves the validity and effect of section 12(b) of the Charter of Alameda County which provides that "The compensation of elective officers shall be fixed at least six months prior to the election of such officers. The compensation of elective officers shall not be increased or diminished after the election of such officer or during his term of office."

Petitioners contend (1) that section 12(b) of the Alameda Charter is unconstitutional, (2) that it is not applicable to justices of the peace, (3) that its provisions are directory and not mandatory, and (4) that the power to "fix" includes the power to change.

It should be noted parenthetically that the salary claims of petitioners cover the period from January 1, 1943, the date the terms of office commenced, to April 30, 1944, which was prior to the adoption of the constitutional amendment authorizing the Legislature to suspend the prohibition against salary increases, and that therefore the decisions in *Busch* v. *Turner*, 26 Cal.2d 817 [161 P.2d 456], and *Holland* v. *Byram*, 28 Cal. 2d 567 [170 P.2d 937], are not applicable. Hence this opinion is not to be construed as limiting any remedy which petitioners may have under the rules of those cases.

It is contended that section 12(b) of the charter is unconstitutional because at the date of its adoption the entire field of legislative activity with respect to salary increases was occupied by section 9 of article XI of the Constitution of the State of California which provided that "The compensation of any city, county, town or municipal officer shall not be increased after his election or during his term of office. . . ."*

It has been held that where the language of a statute indicates that the Legislature intended it to be exclusive with respect to the entire subject or field, an ordinance purporting

---

*Section 9 was repealed in 1933, subsequent to the adoption of the Alameda County Charter, but at the same time section 5 of article XI was amended to include similar language with the following proviso: "The provisions of this section shall not be construed to abridge, modify, or otherwise affect the provisions of Sections 7½, 7½a and 8½ of this article, relating to county or city and county charters."

to regulate a matter within that field is inválid. (*Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515].) Where the field has not been fully occupied by the statute, however, additional or supplementary requirements may be imposed by local regulation. (*Natural Milk etc. Assn.* v. *City etc. of San Francisco,* 20 Cal.2d 101 [124 P.2d 25]; see *Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 370.) Applying this principle to the present case, the charter requirement that compensation be fixed six months prior to election is valid unless the language or scope of the constitutional provision indicates that it is intended to be exclusive and, consequently, that there is no room left for supplementary local regulation. (See *Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 371.) There was nothing in section 9 of article XI, however, which indicated that it was intended to cover anything other than salary increases *after* election. Unlike the situation in the Pipoly case, where the statute constituted a comprehensive and detailed regulation of vehicle and pedestrian traffic, section 9 was but a single limitation upon the general powers granted by section 7½ of article XI to freeholders' charter counties to regulate compensation. Section 7½ authorizes any county to frame a charter for its own government and to provide for the election or appointment of certain officers, including justices of the peace, and for "the times at which and the terms for which said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by Boards of Supervisors. . . ." The charter provision clearly is not inconsistent with any express language in section 9, and, in view of the broad powers granted to the counties by section 7½, we cannot hold that it was the implied purpose of section 9 to prevent additional local regulations with respect to salary increases before election, or that section 9 occupied the entire field. Moreover, since section 9 referred specifically to increases *after* election, under the doctrine of *expressio unius,* the implication, if any, is that there was no intention to impose additional limitations upon the power of counties to regulate the fixing of compensation.

It is next contended by petitioners that the six months' limitation prescribed in section 12(b) applies only to county officers, and not to township officers, such as justices of the peace, whose salaries are regulated exclusively by section 23 of the charter. There is no merit in this contention. Sections 21-24 relate to the number of justices of the peace, constables,

and clerks, their election, appointment and compensation. Section 23 provides that the compensation of justices of the peace shall be fixed by the board of supervisors and that their compensation need not be uniform for the several townships or proportionate to population. Section 12(b) appears in that portion of the charter entitled "General Powers of the Board of Supervisors" (§§ 11-14½) which deals with all types of public officers and employees within the county organization and is not restricted to county officers as opposed to township officers. When the two sections are read together, section 23 authorizes the board of supervisors to fix the salaries of justices of the peace and section 12(b) requires that the salaries of such officers be fixed at least six months prior to the election of such officers.

It is further contended that the provision that "The compensation of elective officers shall be fixed at least six months prior to the election of such officer" is merely directory. In order to determine whether a particular statutory provision as to time is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. (*East Bay Municipal U. Dist.* v. *Garrison,* 191 Cal. 680, 686 [218 P. 43].) When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose (*Calaveras County* v. *Brockway,* 30 Cal. 325, 343), and the courts will look to see whether the provision is of the essence of the thing to be accomplished (*Francis* v. *Superior Court,* 3 Cal.2d 19, 28 [43 P.2d 300]). While time provisions are often held directory, they will be considered mandatory if the language contains negative words or shows that the designation of the time was intended as a limitation of power, authority or right. (*People* v. *Lake County,* 33 Cal. 487, 492.)

The Alameda County Charter requirement that salaries "be fixed at least six months prior to the election" is a limitation on the power to fix, and to construe it as directory would defeat the apparent purpose and render the time provision meaningless, whereas to construe it as mandatory will give effect to what appears to have been the intention of the

framers of the charter. The provision supplements the period covered by the constitutional prohibition contained in section 9, thereby rendering its purpose effective when applied to acts of legislative bodies acting under freehold charters. It has been held that the purpose of the constitutional prohibition was not solely to prevent persons in office from using the power and influence of their positions to secure increases in salary after election, but also to prevent a candidate from using his prospective power and influence upon the legislative body, and that a law increasing salaries, enacted before but not effective until after election, could not affect the compensation to be paid the candidate elected or appointed for that term. (*Harrison* v. *Colgan,* 148 Cal. 69, 74, 76 [82 P. 674] ; see, also, *Rutledge* v. *City of Eureka,* 195 Cal. 404, 419 [234 P. 82] ; *Woods* v. *Potter,* 8 Cal.App. 41, 46 [95 P. 1125].) Charter counties have different time factors to consider in respect to elections and effective dates of legislation from those affecting the Legislature, and the framers of the charter may have considered that six months was a more adequate period in which to prevent a possible concert of action between the legislative body and candidates for office under the charter.

The Supreme Court of Wisconsin, in treating as mandatory a statute containing a time limitation on the power of county officers to fix salaries, stated: "It is quite clear that the statute contemplates that the power shall be exercised at a period remote from the time when such officers were to be chosen, in order to prevent the influence of partisan bias or personal feeling on the part of members of the board in fixing the salary. And, furthermore, it was probably deemed desirable that candidates for office should know precisely what compensation was attached to the office." (*Hull* v. *Winnebago Co.,* 54 Wis. 291 [11 N.W. 486, 487] ; see, also, *Feavel* v. *City of Appleton,* 234 Wis. 483 [291 N.W. 830, 833], and cases cited.)

Finally, it is argued that the power to "fix" includes the power to change, and hence, although the charter requires that salaries be fixed six months prior to election, they may be changed at any time before election. The process of fixing implies primarily, a stabilization or definite determination (Webster's New International Dictionary (2d ed., 1941), p. 958), and no reason is advanced why it should be given other than its ordinary implication here. The cases holding that the "power to fix" includes the "power to change" deal

with general grants of power (see *Fidler* v. *Board of Trustees,* 112 Cal.App. 296, 301 [296 P. 912] ; *Abraham* v. *Sims,* 2 Cal. 2d 698, 711 [42 P.2d 1029]; 17 Words and Phrases, 100 et seq.) and do not apply to a limiting proviso that the general power shall be exercised prior to a given time. (See *Hull* v. *Winnebago Co., supra,* 54 Wis. 291 [11 N.W. 486, 487] ; *Feavel* v. *City of Appleton, supra,* 234 Wis. 483 [291 N.W. 830, 833].)

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.