THE CITY OF CHICAGO

*v.*

ADAM WOLF *et al.*

*Opinion filed April 17, 1906.*

1. CONSTITUTIONAL LAW—*act of 1893, relating to custodians of public funds, is not entirely void.* The act of 1893, (Laws of 1893, p. 136,) in so far as it imposes an additional duty upon custodians of public funds to make such funds bear interest, is not void *in toto* upon the alleged ground that the legislature is without power to authorize a loan of public money.

2. SAME—*object of act of 1893, in permitting custodian to retain part of interest, is expressed in title.* The words "to account for," used in the title of the act of 1893 to compel "custodians of public funds to account for interest on such funds," are broad enough to include that portion of the object of the act authorizing such custodian to retain one-fourth of the interest as extra compensation.

3. SAME—*section 16 of article 4 of constitution applies only to State moneys.* Section 16 of article 4 of the constitution, providing that bills making appropriations for the pay of members of the Gen-

eral Assembly and for salaries of the officers of the government shall contain no provision on any other subject, has reference only to appropriations of money in the State treasury.

4. SAME—*act of 1893, relating to interest on public funds, does not increase municipal taxation.* The provision of the act of 1893 permitting a custodian of a municipal fund to retain one-fourth of the interest realized thereon does not violate sections 9 and 10 of article 9 of the constitution, upon the alleged ground that it gives to the custodian money belonging to the municipal corporation and to that extent increases municipal taxation, since the act is the only legal authority for a custodian of a municipal fund to realize interest thereon, and hence if he acts under its provisions municipal taxation will be reduced.

5. SAME—*act of 1893 does not make a donation of public money for private use.* The act of 1893, to compel custodians of public funds to account for interest, imposes an additional duty upon them in that respect, and hence the provision allowing them to retain one-fourth of the interest realized, as extra compensation, does not amount to a donation of public funds to an individual for private use, in violation of section 20 of article 4 of the constitution.

6. SAME—*provisions of act of 1893, as between State and county treasurers and other custodians, are separable.* The provisions of the act of 1893, (Laws of 1893, p. 136,) in so far as they affect State and county treasurers, are separable from the provisions affecting other custodians of public funds, so that as to the latter the act is not void even though as to the former it might be in conflict with section 23 of article 5 and sections 9 and 10 of article 10 of the constitution, relating to the salaries of State and county officers.

7. FEES AND SALARIES—*the salary of the city treasurer cannot be changed during his term of office.* The provision of an appropriation ordinance fixing the compensation for the city treasurer which is in force when the treasurer is elected and qualifies, controls his compensation for his term of office and is not affected by subsequent ordinances.

8. SAME—*compensation may include salary, assistants and office expenses.* Under section 15 of article 6 of the City and Village act, providing that a city treasurer may receive a salary, fees or "other compensation" to be fixed by ordinance, it is proper for an appropriation ordinance to allow a lump sum for his salary, assistants and office expenses.

9. SAME—*compensation of city treasurer during term is not affected by adoption of Civil Service act.* The compensation of a city treasurer, as fixed by the appropriation ordinance, cannot be affected during his term of office by the subsequent adoption of the Civil Service act, even though ordinance is in conflict with that act.

10. SAME—*ordinance concerning compensation of city treasurer construed.* Under an ordinance allowing the city treasurer sixty per cent of the revenue received as interest on city deposits as his salary, he is entitled to sixty per cent of the total interest without first deducting the twenty-five per cent of such interest which, under the act of 1893, he is entitled to retain as extra compensation for the additional duty of making the fund bear interest.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

On July 21, 1897, in the circuit court of Cook county, the city of Chicago commenced this action in debt against Adam Wolf, as principal, and other persons as his sureties on the official bond of said Wolf as treasurer of the said city of Chicago. On a demurrer filed by appellees to certain pleadings of the appellant the circuit court decided the issues raised in favor of the defendants and against the city and entered judgment accordingly at the May term, 1898. The city then moved for an order setting aside said judgment and granting the city leave to file an amended declaration, which motion being denied, the city prosecuted an appeal to the Appellate Court for the First District, where the judgment of the circuit court was reversed and the cause remanded, with directions to allow the city to amend its declaration. Pursuant to said remanding order the cause was re-docketed in said circuit court and the pleadings were re-cast, and, the case again coming on for trial, the parties agreed to waive technicalities of pleading and submit the case to the court upon its merits, and after trial it was again decided in favor of appellees.

April 2, 1895, Adam Wolf was elected treasurer of the city of Chicago for the term of two years. He qualified and entered upon the duties of said office, continuing to hold the same until April 19, 1897, when he was relieved by his successor. In qualifying for said office said Wolf, as principal, and the other defendants, as sureties, executed and delivered

to said city an official bond in the penal sum of $22,500,000, conditioned that the said "Wolf shall well and faithfully perform and discharge the duties of said office as prescribed and required by law and the orders and ordinances of said city, and shall account for and pay over all moneys received by him as such city treasurer in accordance with law and in accordance with orders or ordinances heretofore passed or hereafter to be passed by the city council of said city in conformity with law, and deliver all moneys, books, papers and all other property belonging to said city to his successor in office." Said bond and sureties were duly accepted by the city of Chicago.

On February 10, 1896, the city comptroller, who is the head of the department of finance of the city of Chicago, which department also embraces the office of treasurer, directed the attention of said Wolf to the statute requiring city treasurers to account for interest on the funds under their control, and pursuant to such notice Wolf reported to the comptroller the amount of interest received by him, and so continued to do thereafter until the expiration of his term of office. According to said reports the total amount of interest received by Wolf during his entire term was $97,411.52, and said reports also show that he paid over to the comptroller, from the amount of interest so received, the sum of $14,-611.73, thus leaving to his own credit the balance, or $82,-799.79. These various payments of interest by Wolf to the comptroller were by check, the comptroller each time giving Wolf a receipt "in full of all interest due city of Chicago." This suit is brought to recover the interest so retained by Wolf, and which Wolf claims is due him as compensation for himself and assistants and for his office expenses. The appellees claim authority for Wolf's actions by virtue of a statute of this State approved June 16, 1893, in force July 1, 1893, and a certain ordinance of the city of Chicago. The said statute was an act providing for custodians of public funds accounting for interest on funds under their control,

and contains the provision that the custodian "shall, at the end of each fiscal year, account for interest on the daily balances of the funds from time to time in his custody, at a rate of not less than two per cent per annum, and as much higher as solvent banks that are reasonably accessible, pay on the daily balances of accounts that are subject to sight draft or check. Three-fourths of such interest shall belong to the public and be added to the fund; and the remaining one-fourth of such interest shall belong to such treasurer or custodian, and may be retained by him as extra compensation for the extra care and responsibility assumed in making the fund bear interest: *Provided,* that nothing herein contained shall be so construed as to in any way release such treasurer or custodian or his bondsmen from any liability," etc. Said statute was in force and remained unrepealed throughout Wolf's term of office. By virtue of said statute Wolf claimed twenty-five per cent of the interest received by him, as compensation, which amounts to $24,352.88.

The ordinance above referred to, and on which appellees rely as authority for Wolf retaining the balance of interest retained by him, which was $58,446.91, is the appropriation ordinance of the city of Chicago, passed during the first quarter of the year 1895, shortly prior to Wolf's accession to office, and which appellees claim fixed his salary during his term, and which ordinance provided: "For salary of city treasurer, including assistants and all office expenses, sixty percentum of the revenue received as interest on city deposits."

On the part of the appellant it is contended that the provisions of the above mentioned statute and ordinance relative to the salary of the city treasurer were unconstitutional and void, and conferred on the appellee Wolf no authority for retaining the amounts claimed by him as salary or compensation for serving as treasurer. On the part of appellant it is still further contended that the provisions of said ordinance, if construed as fixing the salary of the city treasurer,

are invalid because contravening and repugnant to the Civil Service act, which it is claimed by appellant was adopted and in force in said city of Chicago April 2, 1895, and that even if Wolf is entitled to the sixty per cent provided for in the ordinance mentioned, yet it should not have been computed on the total amount of interest received, $97,411.52, but on $73,058.64,—that is, the total amount of interest ($97,411.52) less the twenty-five per cent retained under the provisions of the statute aforesaid, which was $24,352.88.

It should, perhaps, also be stated that on March 2, 1896, the city council passed an appropriation ordinance for the fiscal year 1896, and inserted therein, relative to the salary of treasurer, "the above (sixty percentum) is to be the entire compensation of the city treasurer for services of himself and assistants and all office expenses." Again, in the appropriation ordinance passed March 18, 1897, for the fiscal year 1897, the percentum allowed "for salary of city treasurer," etc., was reduced from sixty to fifty, and it was also provided that "this compensation includes twenty-five per cent allowed by the State law, and is to be the entire compensation of the city treasurer for services of himself and assistants and all office expenses."

Relative to these different ordinances appellant contends that by them the compensation of the treasurer was not fixed, but that there was simply an annual appropriation for said treasurer, and that such annual appropriation cannot be regarded as the fixing of a salary. On the other hand, appellees contend that the appropriation ordinance of 1895, first above referred to, passed just prior to Wolf's accession to office, fixed his salary for that year, and, inasmuch as said salary could not lawfully be changed during his term of office, the provisions of that first appropriation ordinance necessarily determined the salary for the entire term.

EDGAR B. TOLMAN, Corporation Counsel, and HENRY SCHOFIELD, for appellant.

JOHN C. RICHBERG, and LAWRENCE HARMON, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Wolf retained twenty-five per cent of the interest collected on the city funds as a part of his compensation, under an act which became effective July 1, 1893, (Laws of 1893, p. 136,) and which has been repealed since his term of office expired, but which, when in force, provided:

"That the State Treasurer and every county, city, township, school and park treasurer, and every other custodian of public funds, who shall be hereafter elected or appointed and qualified, shall, at the end of each fiscal year account for interest on the daily balances of the funds from time to time in his custody, at a rate of not less than two per cent per annum, and as much higher as solvent banks that are reasonably accessible, pay on the daily balances of accounts that are subject to sight draft or check. Three-fourths of such interest shall belong to the public and be added to the fund; and the remaining one-fourth of such interest shall belong to such treasurer or custodian, and may be retained by him as extra compensation for the extra care and responsibility assumed in making the fund bear interest: *Provided*, that nothing herein contained shall be so construed as to in any way release such treasurer or custodian or his bondsmen from any liability: *And, provided, further*, that if any such treasurer or custodian shall keep such funds or any part thereof in his personal possession and not in a bank or on deposit for the purpose of receiving interest on the same and keep the same in actual money and not in securities, and shall not in any way use such funds or any part thereof himself, or receive any interest or thing of value or compensation for the use of said funds, or permit them to be used by any person, persons, co-partnership or corporation, for his benefit, then he shall not be required to account for any interest

on the funds so kept, providing no responsible depository accessible shall be. willing to pay interest, and in that case he shall make, sign and file an affidavit in the following form :" (Here follows a form for affidavit.)

It is first contended by the city that the act of 1893 was void *in toto,* for the reason that the legislative department is without power to command or authorize the loan of public money even by way of deposit in a bank where the fund may be withdrawn at any time. We have carefully examined the numerous authorities cited in the voluminous brief of appellant on this branch of the case. Neither of them is directly in point. This court in the case of *Dreyer* v. *People,* 176 Ill. 590, recognized the validity of the statute in part at least, for it is there said that by this act an additional duty in respect to the fund was cast upon the defendant in that case, who had been treasurer of a board of park commissioners. That duty so recognized by this court was plainly a duty to make the public fund bear interest where that could be done in accordance with the provisions of this statute. Such additional duty could not have been the duty of adding to the fund three-fourths of such interest, because without this statute it was the duty of the treasurer to add all of such interest, if collected, to the fund. It follows, without argument, that if the act charged the custodian or keeper of a public fund with an additional duty with respect to the fund, the act was not entirely void.

It is next urged by the city that the act, in so far as it allowed the treasurer to retain one-fourth of such interest as extra compensation for the extra care and responsibility assumed in making the fund bear interest, was unconstitutional.

The title of this act was, "An act to compel State, county, city, township, school and park treasurers and other custodians of public funds to account for interest on such funds under their control," and it is said that the provision in the act making the treasurer or custodian the owner of one-

fourth of the interest is not expressed in the title, and cannot be made effective even though the remainder of the act be not obnoxious to the constitution. The leading case upon which appellant relies in this regard is that of *People* v. *Mellen,* 32 Ill. 181. The act there under consideration was an act to repeal certain acts therein named. The act not only repealed those acts, but contained certain affirmative legislation, which this court held was not expressed in the title of the act. Other cases to the same effect are cited. We think the words "to account for," in the title, do not necessarily mean to pay over, and that as this act provides the manner in which the treasurer or other custodian shall account for the interest, namely, by adding three-fourths thereof to the fund and by retaining the remaining one-fourth as his individual property, it can be said that the object of the portion of the act authorizing him to so retain one-fourth of the fund is expressed in the title.

It is then argued at some length that this provision contravened section 16 of article 4 of the constitution, which is as follows:

"The General Assembly shall make no appropriation of money out of the treasury in any private law. Bills making appropriations for the pay of members and officers of the General Assembly, and for the salaries of the officers of the government, shall contain no provision on any other subject."

It is evident that this section has reference only to bills making appropriations of money in the State treasury, and can therefore have no application here.

It is next urged that this provision contravened sections 9 and 10 of article 9 of the constitution, which are:

"Sec. 9. The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested

with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same.

"Sec. 10. The General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same. Private property shall not be liable to be taken or sold for the payment of the corporate debts of a municipal corporation."

Appellant contends that the provision of the act giving one-fourth of the interest to the custodian of the fund constituted the imposing of taxes upon municipal corporations, or the inhabitants or property thereof, for municipal purposes, because it took money which, but for said provision, would have belonged to municipal corporations and gave it to the treasurers or other custodians, and, to the extent of the amount taken, necessitated a resort to increased taxation by municipal corporations, and it is said that the legislature is without power to so necessitate such increased taxation. In our judgment this argument indicates a misapprehension of the purposes of this statute. Without this law custodians of public funds were without any legal authority for loaning the fund or for depositing it where it would draw interest. This act authorized the public treasurers of the State to realize interest from the deposit of the fund and required them to pay three-fourths thereof to the fund. It was only by virtue of this enactment that city treasurers were authorized to realize and receive such interest. By this law current funds might lawfully have been used by the treasurer for the purpose of producing additional sums for the public. Of the earnings of such public funds the officer was to receive as compensation the one-

fourth part. The act must be considered as a whole, and when so considered it is apparent that if the treasurer acted under its provisions, taxation, instead of being increased, would have been reduced.

It is next urged that this provision for the payment of one-fourth of the interest to the treasurer contravened section 20 of article 4 of the constitution, because it was a donation of public money to an individual for merely private uses, and was therefore void. This position disregards the view of this statute taken by this court in *Dreyer* v. *People, supra,* where it is said that the treasurer is by this act charged with an additional duty with respect to the fund, and that the legislature by this act allowed to the treasurer a portion of the interest as extra compensation for the care and responsibility in making the fund bear interest.

The next position is, that the statute contravened section 23 of article 5 of the constitution, which provides that the officers named in that article, being State officers and including the State treasurer, shall receive for their services a salary to be established by law, and shall not receive to their own use any fees, costs, perquisites of office or other additional compensation, and that the statute was therefore void as applied to the State treasurer; that it was also in contravention of section 9 of article 10, which provides that the clerks of all courts of record, and certain other officers in Cook county, including the treasurer, shall receive as their only compensation for their services, salaries to be fixed by law, and that all fees, perquisites and emoluments above the amount of such salaries shall be paid into the county treasury, and that the act was therefore void as applied to the treasurer of Cook county; that it was also in contravention of section 10 of article 10 of the constitution, which provides that the county board, except as provided in section 9 of article 10, shall fix the compensation of all county officers, and that the act was therefore void as applied to all county treasurers in the State outside of Cook county, and that being void as to

the State treasurer and all county treasurers, it must therefore be held void and inapplicable to city officers and all other officers included in the general words used in the act. It is unnecessary in this case to determine the validity of this act so far as the State treasurer and county treasurers are concerned. We have been unable to agree with counsel in their conclusion that if the provision, for constitutional reasons, cannot be applied to those officers it is therefore void as to all other officers mentioned in the statute. The rule relied upon by appellant, that where certain portions, clauses or phrases of the act are attacked as being obnoxious to the constitution, and where the remainder of the statute would not be vulnerable to such an attack but for the fact that such remainder is linked with the portions that are so attacked, is thus stated by Judge Cooley: "And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them." (Cooley's Const. Lim. *178; *People* v. *Cooper,* 83 Ill. 585.) When we attempt to apply this rule to the statute now before us, it becomes evident that the provisions, so far as they affect the State treasurer and county treasurers, are in nowise connected with or dependent upon the other provisions, so far as those other provisions affect other custodians of public funds; that is, it is not apparent that the legislature would not have passed this act with reference to all custodians of public funds other than the State treasurer and the county treasurers, had it appeared to that body that for constitutional reasons such an act could not be made effective as to the last named officers.

"A legislative act may be entirely valid as to some classes of cases and clearly void as to others. *  *  *  A

law might be void as violating the obligation of existing contracts but valid as to all contracts which should be entered into subsequent to its passage, and which therefore would have no legal force except such as the law itself would allow. In any such case the unconstitutional law must operate as far as it can, and it will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the constitution forbids." Cooley's Const. Lim. *180.

An act which attempted to confer exclusive jurisdiction upon the county courts in a certain class of cases, and which would have been unconstitutional for that reason, was held to be valid in so far as it conferred jurisdiction on the county courts concurrent with the circuit courts, and enforcible to that extent. (*Myers* v. *People,* 67 Ill. 503.) If a statute attempts to accomplish two objects and is void as to one, it may still be in every respect valid as to the other. *Cornell* v. *People,* 107 Ill. 372.

It is therefore immaterial whether this statute was operative so far as the State treasurer and county treasurers are concerned, because, even if it should be held to have been invalid as to those officers,—and we expressly refrain from intimating any opinion on that subject,—it could still have been enforced so far as the other officers mentioned therein are concerned.

It is further objected that the statute violated other provisions of the State constitution, and likewise violated the constitution of the United States. We have examined the authorities cited and considered the arguments offered in support of such further objections and regard those objections as somewhat hypercritical, and it is unnecessary to lengthen this opinion by fully stating our views in regard thereto.

We are of the opinion that the statute under consideration was constitutional in so far as its provisions are material in this cause.

Wolf was elected April 2, 1895. He qualified and entered upon the duties of his office April 16, 1895. His term ended April 19, 1897. By a provision inserted in the appropriation ordinance of 1895, passed March 8, 1895, the salary of the city treasurer, including the compensation of his assistants and his office expenses, was fixed in these words: "For salary of city treasurer, including assistants and all office expenses, sixty percentum of the revenue received as interest on city deposits."

Section 11 of article 9 of the constitution of the State provides: "The fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased or diminished during such term." Section 86 of chapter 24, Hurd's Revised Statutes of 1903, provides that if the salary, fees or other compensation of certain city officers, including the treasurer, "has been once fixed, such fees or compensation shall not be increased or diminished, to take effect during the term for which any such officer was elected or appointed." It follows, therefore, that no ordinance of the city of Chicago passed after April 16, 1895, could affect or change the amount of Wolf's compensation, and that his allowance for salary, assistants and office expenses remained throughout his term as fixed by the ordinance of March 8, 1895.

It is said, however, that it was improper to fix by the ordinance a lump sum for the salary, office expenses and pay of assistants of the city treasurer. In *Kilgore* v. *People,* 76 Ill. 548, a similar provision fixing in one sum the salary, clerk hire and allowances for stationery and fuel of the county treasurer was approved, and following the reasoning of that opinion we hold that the provision contained in the ordinance now before us cannot be defeated by reason of the fact that separate sums or separate percentages were not fixed for each of the three items covered by that provision. Section 86, *supra,* provides that the city treasurer "may receive a salary, fees or other compensation to be fixed by

ordinance." The term "other compensation" there used is broad enough to include allowances made for the payment of assistants and office expenses.

It is also argued that the ordinance of March 8, 1895, fixing Wolf's compensation, pay of assistants and office expenses is in conflict with the Civil Service act and must yield to the latter. This act became the law in the city of Chicago on July 1, 1895, upon the mayor of that city making proclamation to that effect on that day, pursuant to section 484 of chapter 24, Hurd's Revised Statutes of 1903. As Wolf's compensation, for reasons heretofore stated, could not be changed during his term, it could not be affected by this act, which became effective only after the beginning of his term.

It is then contended that if both the ordinance and the statute in question be valid Wolf should be allowed twenty-five percentum of the interest received on the city funds under the statute and under the ordinance sixty percentum,— not of the entire amount of interest received on city deposits, but sixty percentum of that portion thereof remaining after deducting the twenty-five percentum allowed by the statute, which would be sixty percentum of seventy-five percentum, or forty-five percentum of the total amount of the interest, and added to the twenty-five percentum allowed by the statute would make an aggregate of seventy percentum of the entire interest, and result in his receiving fifteen percentum less than he has received. We think such a construction does violence to the language of the ordinance. It provides that he shall have "sixty percentum of the revenue received as interest on city deposits," which means sixty percentum of the entire amount of interest received, and the statute authorizes him to retain one-fourth, or twenty-five percentum, of the interest received by him, as "extra compensation." It is evident that under the ordinance and the statute together he was entitled to eighty-five percentum of all the interest received.

Many other propositions, some collateral, some subordinate and others analogous to the controlling questions involved in this cause have been argued. A discussion, in this opinion, of these collateral, subordinate and analogous matters would be profitless.

Propositions of law were submitted to and passed upon by the circuit court. It follows from what we have said that the court's action in holding or refusing each of the propositions of law, respectively, was without reversible error, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*