A. M. SCHANKE, a taxpayer, appellant, et al. v. GEORGE E. MENDON, mayor, et al. (city officers) and CITY OF MASON CITY, appellees and cross-appellants.

No. 49609.

(Reported in 93 N.W.2d 749)

304

December 16, 1958.

Fred A. Ontjes, of Mason City, for appellant.

Ray E. Clough, of Mason City, for appellees.

Thompson, J.—The present controversies involve the validity of three ordinances of the City of Mason City. Ordinance No. 760 purports to increase the salary of the mayor of the city from $6000 to $8400 per year, beginning January 1, 1958. It was adopted by the city council on November 4, 1957, and published as by law required on November 25 following.

Ordinance No. 669 was adopted on April 5, 1954, and publication had on April 8 following. It provided for a lump sum allowance of $50 to the mayor who was then and at all times thereafter the defendant George E. Mendon, "to cover usual and normal expenses necessary and incidental to the office of Mayor, including automobile expense in connection with said office." Ordinance No. 738, adopted on January 7, 1957, and published on January 17 thereafter, increased this expense allowance to $75 per month. The trial court upheld the validity

of No. 760, but struck down Nos. 669 and 738 as being in fact additional emoluments in violation of section 368A.21 of the Code of 1954. Judgment was entered against the defendant Mendon for all sums paid to him under the provisions of Ordinances Nos. 669 and 738, except for payments made prior to January 10, 1955, the recovery of which was held barred by section 614.1(4). The plaintiff appeals from the portion of the judgment and decree holding Ordinance No. 760 valid, and the defendants from that part finding Nos. 669 and 738 void and entering judgment against the defendant Mendon.

Determination of each appeal depends upon the proper consideration and construction of section 368A.21, supra. We quote the material part herewith: "No member of any city or town council shall, during the time for which he has been elected, be appointed to any municipal office which has been created or the emoluments of which have been increased during the term for which he was elected, nor shall the emoluments of any city or town officer be changed during the term for which he has been elected. * * *." Plaintiff's appeal involves a decision as to when the "term for which he has been elected" begins; the defendants' appeal turns upon whether the so-called expense allowances were in fact additional "emoluments" of the office of mayor of Mason City.

I. We consider plaintiff's appeal first. We shall for the purpose of brevity denominate George E. Mendon as the defendant, since all moneys which plaintiff claims were illegally paid went to him. He was first elected as mayor in November 1953. Under the terms of section 363.8, elections for mayor and other elective officers were held in Mason City (and elsewhere) on Tuesday after the first Monday in November 1957, which was November 5. The defendant's term as mayor was to expire on the second secular day of January 1958, by virtue of the same statute. He was a candidate for re-election, and was unopposed. On the evening of November 4, 1957, the city council at a regular meeting passed Ordinance No. 760, which increased the salary of the mayor from $6000 to $8400 per year, beginning on the first of the next year, 1958.

The plaintiff strongly contends that for the purposes of section 368A.21, supra, the "term for which he has been elected"

commences with the election of a municipal officer rather than the time he takes office. So, since Ordinance No. 760 was not published until November 25, it is urged that it was not in effect until that date, when the elective term of the defendant had already commenced. There is considerable argument between the parties as to when an ordinance actually may be said to be effective: at the time of its adoption by the council, or at the time of its publication, which is necessary before it can be enforced. As we view the matter, however, it is not necessary to decide this point.

We think that clearly the defendant's term to which the salary increase applied did not commence until January 1958. The statutes seem decisive on the point. While it happened that the defendant was the mayor in 1957, by virtue of his election in 1953, his then term continued until the new one began in January. His authority from the time of the election until the second secular day of January 1958 was by virtue of his term which began four years before; he had no rights, powers or authorities through the election of 1957 until the new term commenced, except the right to then qualify for and take over the office of mayor for another four years.

The plaintiff relies strongly upon Cox v. City of Burlington, 43 Iowa 612. Here the plaintiff was serving as marshal of the city at a salary of $75 per month, when it was a special charter city. On July 20, 1874, the electorate voted to organize under the general law, and an election for city officers was held on March 1, 1875, at which the plaintiff was again elected marshal. At the first meeting of the council after the election the salary of the marshal was fixed at $60 per month, and the plaintiff brought his action, setting up Code section 491, Code of 1873, which was in language substantially the same as the part of our present section 368A.21 quoted above.

Apparently the special charter was in force for a time after the ordinance fixing the salary at $60 per month was enacted. This is the statement of the opinion. (See page 613 of 43 Iowa.) It is there said that "The special charter lapped over and covered a portion of the time which was covered by the term for which the plaintiff was elected * * *. During that time the salary of the plaintiff's office was seventy-five dollars per month.

During a part of the term, therefore, for which he was elected, the salary of his office was seventy-five dollars per month." These facts distinguish the Cox case from the one at bar. It must be admitted there is language in the case which supports plaintiff's contention. But the basic holding seems to be that the ordinance was an attempt to lower the salary for at least a portion of the term then being served.

Other Iowa cases cited by the plaintiff do no more than hold to the rule that emoluments of an office may not be changed during the term then being served. Factually they do not touch the point as to whether section 368A.21 covers the time between election and the beginning of the term of office. These cases are Ryce v. City of Osage, 88 Iowa 558, 55 N.W. 532; City of Council Bluffs v. Waterman, 86 Iowa 688, 53 N.W. 289; and Purdy v. Independence, 75 Iowa 356, 39 N.W. 641. An opinion of the Attorney General of Iowa is also relied upon. The opinion in turn cites and follows the language in Cox v. City of Burlington, supra, which we have said is not controlling because of the facts therein involved.

City of Chicago v. Wolf, 221 Ill. 130, 144, 77 N.E. 414, and In re Bowman, 111 Pa. Super. 383, 170 A. 717, are also cited. They hold only that the compensation of a public officer may not be changed, under existing statutes, during his term in office. They do not touch the question whether the period from election to taking over is a part of the term; indeed, there is an implication to the contrary in the Wolf case, where an ordinance adopted on March 8, 1895, had fixed the pay of the city treasurer. Wolf was elected treasurer on April 2, 1895, and qualified and took over the office on April 16. The Illinois Supreme Court said (page 143 of 221 Ill., page 418 of 77 N.E.) : "It follows, therefore, that no ordinance of the City of Chicago passed after April 16, 1895, could affect or change the amount of Wolf's compensation * * *."

Two other cases from foreign jurisdictions cited by the plaintiff are of considerable interest. They are Feavel v. City of Appleton, 234 Wis. 483, 486, 291 N.W. 830, 832, and Pulcifer v. County of Alameda, 29 Cal.2d 258, 260, 175 P.2d 1, 2. They show the manner in which other states have protected against the procedure of which plaintiff complains here; that is, the

change in "emoluments" between the date of election and the time of investment with the office. In the Feavel case the statutory provision was this:

"Sec. 62.09(6), Stats. 1937. Compensation. * * *

"(b) Whenever such salaries are to be changed or established the council shall, not later than the first regular meeting in February, fix the amount of salary of each officer entitled to a salary who may be elected or appointed for a definite term during the ensuing year. The salary of an officer so appointed or elected shall not be increased or diminished during his term of office. * * *."

The constitutional provision material in Pulcifer v. County of Alameda, supra, is also quoted: "The compensation of any city, county, town or municipal officer shall not be increased *after his election or during* his term of office." (Italics supplied.) In Wisconsin, municipal elections were held on the first Tuesday in April. It is clear that the framers of the Wisconsin statute and the California Constitution recognized that a provision against changes during the "term of office" did not protect against increases or decreases in emoluments after the election but prior to the beginning of the term, and took appropriate precautions. Our own legislature has not seen fit to do this, and we cannot by judicial fiat fill the gap.

Section 363.28 of the Code, in effect at all times material here, says: "All elected municipal officers shall take office on or before noon of the second secular day of January following their election." During the interval from November 5, 1957, the date of the election, until January 2, 1958, the defendant was holding office as mayor by virtue of his election in 1953. His term then was the first four-year term; his second term did not commence, by the plain words of the statute, until January 2, 1958. Desirable though it may be thought to be, there is no provision in our laws against a change in salary of elective officers after their election but before their term commences. No one could contend that, if the office had been held for the term from January 1, 1954, to January 2, 1958, by another person, the "term" of the defendant as newly elected mayor commenced before the latter date. But there is no distinction because the defendant was already holding the position and

was re-elected. As the Michigan Supreme Court held, in City of Grand Haven v. United States Fidelity & Guaranty Co., 128 Mich. 106, 108, 87 N.W. 104, 92 Am. St. Rep. 446: "It is settled by numerous authorities under statutes similar to ours that the period between the election of a successor and the time he actually qualified is as much a part of the prior term as the preceding period, and that, too, where a party is elected his own successor." It is said in 67 C. J. S., Officers, section 42, page 195, that "'term of office' is * * * generally * * * the fixed period of time for which the office may be held; the period designated by the constitution or statute as the time during which the office may be held * * *." In Broadwater v. Kendig, 80 Mont. 515, 261 P. 264, a case very much in point here, it was definitely held that an ordinance increasing the salary of an officer, passed during a first term to take effect during a second, did not violate a Montana statute similar to our own section 368A.21, supra. See also Riggins v. Richards, Tex. Civ. App., 79 S.W. 84, and Wesch v. Common Council of City of Detroit, 107 Mich. 149, 64 N.W. 1051.

It is not for the courts to pass judgment upon the propriety of the procedure adopted by the city council here in increasing the defendant's salary. The only prohibition against salary increases is found in section 368A.21, and we cannot extend it beyond its clear meaning. The legislature might have made the restriction more extensive, by its terms, so that a "change in emoluments" could not be effected between election and installation, as was done in Wisconsin by statute and in California by the Constitution; but it has not done so. The statutes, both section 368A.21, and 363.28, which defines the term, are unambiguous; there is no room for construction or interpretation. As a moral proposition, it may be true the salary should be fixed with reference to the office rather than to the officer. But if the legislature has left a gap in the public defenses against violation of this principle, the courts have no right to fill it by judicial legislation. If the breach is to be closed, it must be done by the lawmaking body. We conclude that Ordinance No. 760 was and is valid, and the increased salary for the term beginning in January 1958 has been properly paid thereunder.

II. Consideration of the defendant's appeal from that part of the trial court's decree and judgment holding Ordinances Nos. 669 and 738 invalid requires a determination of the question whether these enactments involve a change in the emoluments of the office of mayor. They were each intended to be effective during the term which was then being served; and if they do in fact amount to additional emoluments of the office they must be held void as in violation of section 368A.21, supra.

■■ It is well settled that a municipality may reimburse an officer for expenses actually incurred which are reasonably required in carrying out the duties of his office. 62 C. J. S., Municipal Corporations, section 535, pages 981, 982; Hill v. City of Clarinda, 103 Iowa 409, 72 N.W. 542. We think the governing rule which we must follow here is well stated in a quotation approved by the Supreme Court of Michigan in Ware v. City of Battle Creek, 201 Mich. 468, 471, 167 N.W. 891, 892, L. R. A. 1918E 673: " 'Such limitations [on the power to change emoluments during the term of office] do not affect provision for expenses, except that use may not be made of a power to increase an allowance for expenses so as to increase the compensation received by an officer; * * *.' "

■ In the absence of constitutional restriction, an officer may be allowed repayment of the expenses actually incurred by him in the performance of his official duties. When a duty is required of an officer and no provision is made for expenses, they are properly charged to the public body for whose benefit it is done. 67 C. J. S., Officers, section 91, page 329. But he is allowed only the actual expense; any excess over the actual cost is an increase in compensation, a "change in emoluments" of his office. 67 C. J. S., Officers, section 91, page 330; State ex rel. Doty v. Styke, 29 Tenn. App. 620, 199 S.W.2d 468, 471, 472.

■ These principles are thoroughly settled; it remains to apply them to the facts in the instant case. It will be noted that the allowances for expenses here, made at $50 per month by Ordinance No. 669 and increased to $75 per month by No. 738, are in lump sums. Each ordinance purports to make the allowance for expenses necessary and incidental to the office of mayor, including automobile expense in connection with the office. It is evident that automobile expense is not the only item;

the total includes but is not confined thereto. The ordinances speak of expenses "incidental" to the office; a quite comprehensive term, as the evidence indicates. The defendant as a witness estimated that 70% of his automobile mileage was incurred while he was on the city's business in visiting various departments and projects. He also said:

"Other than driving my automobile on city business there are other expenses that I incur in connection with my duties as mayor. The mayor is first on the list for all donations and buying the first ticket; and in the position of mayor I am invited to many, many luncheons by groups and Chamber of Commerce and Chamber of Commerce committees; to many evening meetings, the meetings such as the North Iowa Peace Officers Association. At meetings of that nature, I am put to some expense. The nature of that expense in most cases is to buy my own lunch; everyone pays for his own lunch. I have not kept any itemized list or accounts of expenses incurred by me in attending such gatherings or meetings. I have no accurate judgment of what the total amount of those expenditures are in any given period. * * * Expenses of that nature are covered by these ordinances."

Two things appear from the foregoing testimony: that the lump sum expense ordinances were intended to cover some expenses which were personal rather than official, and that they did away with any requirement of exact accounting. Much of our holding in Gallarno v. Long, 214 Iowa 805, 243 N.W. 719, is in point here. We there distinguished between official and personal expenses, and held that an allowance to legislators for the latter amounted to an increase in compensation and was in contravention of section 25, Article III, of the Constitution of Iowa. At this point the Gallarno case is controlling. Payment of expense of the mayor for meals when he was attending meetings of various unofficial groups would be payment of a personal expense; and the same is true of his donations to charitable causes, no matter how worthy the causes might be or how commendable the giving. Nor does naming the allowance an "expense account" make it such, if in fact it is not confined to

legitimate expenses connected with the duties of the office. Laman v. Moore, 193 Ark. 446, 100 S.W.2d 971, 972.

The able trial court also called attention to the fact that the ordinances do not require detailed accounting for automobile expense, in contravention of Code sections 79.9, 79.10 to 79.13 inclusive and 368A.5. Section 79.9 limits the amount to be allowed to a public official for use of an automobile to not to exceed seven cents per mile; and sections 79.10 to 79.13 inclusive exemplify the general policy of the state to require specific itemizing of expense accounts. Section 368A.5 makes it mandatory that municipalities keep accurate and detailed accounts of all public funds received and expended. It is obvious that Ordinances Nos. 669 and 738 do not meet these requirements. There is no way of determining what portion of the lump sum allowances is for automobile expense, much less how many miles were actually traveled or what was the charge per mile; and, as has been pointed out, it is further apparent that some part of the amounts are for donations, meals not directly connected with or required by official duties, and other items not properly allowable as official expenses.

The defendant, cross-appellant at this point, cites and relies upon four cases from other jurisdictions. Ware v. City of Battle Creek, supra, is one of these. But the holding there is only that, where the city attorney was required to maintain an office and none was provided by the municipality, he might properly be allowed a reasonable sum for rent for an office maintained by him. Milwaukee County v. Halsey, 149 Wis. 82, 136 N.W. 139, was concerned with a statute allowing the circuit judges in Milwaukee County a larger salary than judges in the other counties of the state, the excess over the compensation of such other judges to be paid by that county. The compensation of the judges in the other counties was fixed at $3600 each, but a statute newly enacted also gave them an expense allowance of $400 per year. The question was whether Milwaukee County must pay the excess above $3600 or whether the $400 expense allowance was to be considered as compensation so that Milwaukee County must pay only the excess over $4000. Without discussing the question as to whether a lump sum allowance was in fact additional compensation, the Wisconsin Supreme Court

said that in providing that Milwaukee County should pay the additional amount above that fixed as compensation for judges in other counties, the legislature intended such compensation to mean the amount it had in terms defined as such.

The other two cases cited by the defendant in support of his cross-appeal are State v. Sheldon, 78 Neb. 552, 111 N.W. 372, and McCoy v. Handlin, 35 S. D. 487, 153 N.W. 361, L. R. A. 1915E 858, Ann. Cas. 1917A 1046. State v. Sheldon concerned the question whether furnishing a residence for the governor constituted an additional compensation. The case is discussed in Gallarno v. Long, supra, at page 812 of 214 Iowa, page 722 of 243 N.W. It is there said that providing a mansion for the governor is not additional compensation within the meaning of our statute, but that historically the state may furnish a residence to the governor and this is not to be considered as a part of his compensation. McCoy v. Handlin, supra, and other South Dakota cases to the same effect are expressly disapproved in the Gallarno case, in this language: "These South Dakota cases have been carefully considered, and it is apparent that the discussion therein overlooked some of the fundamental principles in constitutional interpretation. Therefore, the South Dakota cases cannot be followed." See page 813 of 214 Iowa, page 722 of 243 N.W.

It seems evident that Ordinances Nos. 669 and 738 change the emoluments of the office of Mayor of Mason City; and since they were intended to, and did, take effect during a term of office then being served they are in conflict with section 368A.21 and must be disapproved.

III. Since plaintiff-appellant's motions to strike cross-appellant's reply brief and argument and to strike the appearance of the attorney for the City of Mason City in no manner affect the determination of the merits of the case, they are denied.

Costs will be taxed one half to plaintiff and one half to defendant Mendon individually.—Affirmed on both appeals.

All JUSTICES concur except BLISS, J., who takes no part.