Dear Delegate Getty:
You have requested an opinion with regard to per diem expense allowances received by the County Commissioners of Carroll County.
We understand that Commissioners receive an expense allowance that includes a per diem[1] amount as well as reimbursement for mileage, meals, and other out-of-pocket expenses. In your letter you referred to recent news reports that, on November 24, 1998, in a 2-1 vote, the outgoing Board of Commissioners increased the per diem allowance of Commissioners from $12 to $90. According to those reports, the new per diem amount was to become effective for the newly elected board that took office on December 7, 1998.[2] However, on December 3, 1998, the outgoing Board rescinded its action and directed the county finance officer to conduct a study of the actual expenses incurred by the County Commissioners in the past to justify a new per diem allowance.
You ask whether the governing law permitted the Board of Commissioners to increase their per diem allowance from $12 to $90. In addition, you ask whether a provision of the Maryland Constitution that prohibits a change in the compensation of a public officer during the officer's term means that the perdiem allowance may not be altered during the term of the newly elected Board of Commissioners. We realize that the Commissioners' decision to rescind the increase makes it unnecessary to decide whether the original action was lawful, but because the issue may arise in the future, the answers to your questions may provide useful guidance for the new Commissioners. In addition, you indicate that you are considering possible legislation on this subject.
For the reasons set forth below, we conclude that the $78 increase in the per diem allowance was not authorized by the relevant statute and that the Commissioners acted appropriately when they rescinded that increase. Had the Commissioners not rescinded the increase, nothing in the constitutional prohibition against altering a public officer's compensation during the officer's term of office would have required that an unlawful action be given effect.
The per diem allowance may not be altered during the term of the new Board of Commissioners if the new per diem amount would exceed the actual official expenses of the Commissioners, thereby constituting a mid-term increment to their compensation in violation of the State Constitution.
 I Authority of County Commissioners to Set Expense Allowance
A. Delegation of Authority to Commissioners
The State Constitution provides that the compensation of county commissioners "shall be such as now [is] or may be hereafter be prescribed by law." Maryland Constitution, Article VII, § 2. The General Assembly has specified the compensation for the Commissioners of Carroll County in Article 7, § 3-1(b) of the Public Local Laws of Maryland. That provision reads:
(b) Each County Commissioner is entitled to:
(1) a salary of $32,500.00 a year; and
 (2) An allowance for expenses incurred in the performance of the duties of that office, as provided in the county budget.
Thus, the statute provides that Commissioners are to receive a salary in an amount specified by the General Assembly[3] and delegates to the Commissioners the authority to provide in the county budget an additional allowance for job-related expenses.
The Commissioners are not otherwise authorized to set their own compensation. County commissioners have only those powers that are expressly conferred by the General Assembly or that reasonably may be implied from a statute. Miller v. CountyCommissioners of Carroll County, 226 Md. 105, 114, 172 A.2d 867
(1961). Such powers are to be strictly construed. Walker v.County Commissioners of Talbot County, 208 Md. 72, 86,116 A.2d 393 (1955). Indeed, at common law, the possibility that a public officer would have the ability to set his own salary was a key test of the incompatibility of two offices. See Hetrich v. CountyCommissioners of Anne Arundel County, 222 Md. 304, 308,159 A.2d 642 (1960) (county commissioner could not serve as acting county business manager in part because county commissioners set salary of business manager).
Article 7, § 3-1(b) of the Public Local Laws of Maryland may have modified the common law rule, but not to the extent of permitting the County Commissioners to enhance their own salary. It is hardly necessary to give a narrow reading to § 3-1(b) to conclude that any per diem allowance under that statute must be reasonably related to actual or anticipated expenses that a Commissioner incurs in carrying out the duties of his or her office. The statute itself literally refers to "an allowance forexpenses incurred in the performance of the duties of that office" (emphasis added) and not simply to "an allowance".
To the extent that a per diem amount is paid that bears no relation to actual expenses, it takes on the character of salary and is beyond the authority that the Legislature has delegated to the County Commissioners. See 42 Opinions of the AttorneyGeneral 316 (1957) (statute stipulating that members of state planning commission were to receive no compensation, except payment of "reasonable expenses," did not authorize per diem
payment unrelated to expenses); 20 Opinions of the AttorneyGeneral 217 (1935) (expense allowance unrelated to actual expenses may not be used to increase salary of state official).
An illustrative case is Cecil v. Commissioners of Anne ArundelCounty, 121 Md. 696, 87 A. 1106 (1913), in which a constitutional provision set a maximum salary for sheriffs at $3,000. A statute subsequently passed by the General Assembly fixed the salary of the Anne Arundel County sheriff at $3,000 per year, provided for the payment of expenses up to the amount of $3,500, and allowed the sheriff to collect a fee of $300 for each execution of the death penalty. The Court of Appeals held that the allowance of expenses did not contravene the constitutional limitation on sheriff "compensation," on the assumptions that the statute simply set a maximum amount on the reimbursement of the sheriff's expenses and that the sheriff would pay over to the State Treasury any amount that exceeded the expenses he actually incurred. However, the additional fee with respect to executions was deemed invalid as it attempted to increase the sheriff's compensation above the statutory maximum in a manner unrelated to actual expenses. 87 A. at 1107.
Similarly, a per diem allowance of the Carroll County Commissioners must be reasonably related to expenses actually incurred by the Commissioners in order to come within the authorization of § 3-1(b). Otherwise, it constitutes an unlawful increment to the Commissioners' statutory salary.
B. Legislative History of Section 3-1(b)
The legislative history of § 3-1(b) confirms this construction. Prior to 1984, the expense allowance provision of § 3-1(b) stated that each Commissioner was entitled to "an allowance for expenses incident to the official discharge of his duties" and included a cross-reference to a general expense reimbursement provision in Article 25, § 28, Maryland Code, applicable to all counties.[4] As of 1984, that provision granted county commissioners $3 per day plus 10 cents per mile for mileage over five miles from their residence unless otherwise authorized by the public local laws of the county. Thus, the Commissioners were entitled to a specific mileage reimbursement, a modest per diem
allowance for other expenses, and any additional expense reimbursement authorized under the public local laws.
In 1984, the Legislature amended § 3-1(b) to eliminate the cross reference to Article 25 of the Maryland Code and provided that each Commissioner would receive "an allowance for expenses incident to the official discharge of his duties" in the annual county budget.[5] The fiscal note accompanying the legislation stated that the Commissioners were receiving a meal allowance in the amount of $22 per day and 20 cents per mile reimbursement in accordance with the Public Local Laws of Carroll County. The fiscal note indicated that the change in the law would have no fiscal impact on the State or County, but would simply bring the law into conformance with the then current practice. The Board of County Commissioners in office at that time endorsed the bill in a letter dated December 13, 1983, addressed to the Carroll County delegation. In that letter, the Commissioners stated:
 We hope that the existing law can be modified to show an adequate mileage and daily expense allowance more comparable to today's costs for transportation and other requirements expected in conjunction with the office. The County Commissioners would prefer to express the amount of expense and mileage in the annual budget for any mileage, meal or other expense associated with the office of County Commissioners.
(emphasis added). Thus, the County Commissioners who were in office at that time themselves advocated the reasonable and readily understandable concept that the amount of the expense allowance would be related to actual costs incurred by the Commissioners.
C. Lump Sum Expense Allowances
The statute does not indicate whether the Commissioners' expense allowance is restricted to reimbursement of actual expenses or whether a lump sum payment is permitted. In our opinion, an expense allowance need not be restricted to reimbursement of specific actual expenses to be related to actual expenses. The use of the term "allowance of expenses" in § 3-1(b) rather than "reimbursement of expenses" suggests that the Legislature intended to allow some flexibility in covering the expenses of the commissioners. The Legislature might reasonably wish to give the county the option to adopt a specific per diem
amount to eliminate the paper work, approvals and audits that might be necessary to operate a system based solely on reimbursement of specific actual expenses.[6] As noted above, for many years, the General Assembly has expressly authorizedper diem allowances as part of the expense reimbursement of county commissioners. Indeed, a mileage reimbursement is itself a form of lump sum reimbursement since it is computed as a specific amount per mile without reference to the actual automobile used, gas or oil consumption, or other factors that may affect the actual out-of-pocket expense to the official.
Of course, if most of a public official's out-of-pocket expenses are specifically and separately reimbursed, there is less justification for payment of a substantial per diem
amount. Moreover, public officials who have been delegated authority to set their own expense allowances may strive to be particularly scrupulous in the assessment of their own expenses. This might be accomplished, for example, by basing lump sum allowances on items that are indisputably job-related expenses and that are susceptible to verification by an external source not under the control of those officials.[7]
D. Increase in Per Diem Allowance Without Reference to Expenses
We understand that the original action of the County Commissioners increasing the per diem amount from $12 to $90 was taken without reference to actual expenses incurred by the Commissioners in the performance of their duties. News accounts quote some of the Commissioners justifying the increase in terms of their compensation compared to other county employees.[8]
Moreover, we understand that Commissioners are also reimbursed their mileage, meal and most other out-of-pocket expenses separately from the per diem amount. If those accounts are true, the answer to the question you pose is readily apparent. The increase in the per diem amount in addition to, and without any relation to, actual expenses was not authorized by § 3-1(b).
 II Effect of Constitutional Prohibition Against Change of Compensation
The Maryland Constitution forbids a mid-term change in the compensation of certain public officials. In particular, Article III, § 35, of the Maryland Constitution provides, in pertinent part:
 Extra compensation may not be granted or allowed by the General Assembly to any public Officer, Agent, Servant or Contractor, after the service has been rendered, or the contract entered into; nor may the salary or compensation of any public officer be increased or diminished during his term of office except those whose full term of office is fixed by law in excess of 4 years.
(Emphasis added). The basic purpose of this section is to preserve integrity in government. Marshall v. Director ofFinance, 294 Md. 435, 437, 450 A.2d 1300 (1982). This provision is "intended to prevent a public officer from using his office for the purpose of putting pressure upon the General Assembly or other authorized agency to award him additional compensation and, on the other hand, to prevent the General Assembly or other agency from putting pressure on a public officer by offering him increased compensation or threatening a decrease thereof."[9]Comptroller v. Klein, 215 Md. 427, 434, 138 A.2d 648 (1958). Similar provisions appear in the constitutions of many other states. See generally Annot., 5 A.L.R.2d 1182.
It is well established that county commissioners are public officers covered by this provision. See, e.g., Pressman v.D'Alesandro, 211 Md. 50, 55, 125 A.2d 35 (1956); CountyCommissioners of Anne Arundel County v. Goodman, 172 Md. 559,561, 192 A. 325 (1957).
A true expense allowance is not considered salary or compensation within the meaning of Article III, § 35. Bowman v.County Commissioners of Harford County, 166 Md. 296, 171 A. 48,49 (1934) (mid-term statutory reduction in sheriff's allowance per prisoner for expenses did not offend Article III, § 35). By contrast, an arbitrary allowance unrelated to expenses might be considered compensation. See generally 67 C.J.S. Officers
§ 234(c) at 748-49; 41 Opinions of the Attorney General 313, 315 (1956) (arbitrary allowance to sheriff for keeping prisoners would constitute mid-term increase in sheriff's compensation in violation of Article III, § 35). In a similar context the Pennsylvania Supreme Court stated:
 A lump sum allowance or appropriation in gross, for expenses is not per se illegal or contrary to the constitutional prohibition against an increase in salary or emoluments; and legislative judgement on the facts is generally conclusive. It has been said, however, that such allowance in gross for expenses "must be within such reasonable limits as to warrant the conclusion that it might be covered by a certified statement of expenses incurred."
Berks County Institution District v. Schoener, 383 Pa. 210,213, 117 A.2d 740, 741 (1955) (emphasis added; emphasis deleted.)See also Hoppe v. Washington, 469 P.2d 909, 912 (Wash. 1970).
In determining whether a particular change in an expense allowance implicates a provision like Article III, § 35, the courts have often distinguished two broad classes of expenses paid for the benefit of public officials. The first class, usually denominated "official expenses," are said to be incidental to the discharge of the duties of the office. A second class, described as "personal expenses," are deemed to include those from which an official might derive a profit or which are not inherent in the discharge of the official's office. See,e.g., 62 Opinions of the Attorney General 464, 472-73 (1977) (use of executive mansion was official benefit of Governor);Bowman v. County Commissioners of Harford County, 166 Md. 296,299, 171 A. 48, 49 (1934); Schanke v. Mendon,250 Iowa 303, 311-12, 93 N.W.2d 749 (1958) (mayor's meal expenses at meetings of unofficial groups and charitable donations were "personal expenses"). The line between these two classes of expenses is not always distinct. While there is general agreement that payment of a public officer's "official" expenses does not constitute compensation subject to the type of proscription in Article III, § 35, there are divergent views among the courts that have considered the question as to whether payment of a public officer's "personal" expenses constitutes compensation.See Annot., 5 A.L.R.2d 1182, 1185; 62 Opinions of the AttorneyGeneral 464, 471-73 (1977).
Thus, whether a lump sum reimbursement constitutes compensation for purposes of Article III, § 35, may depend on whether it is intended for official expenses as opposed to personal expenses. When out-of-pocket expenses are separately reimbursed, it may prove difficult to demonstrate the relationship of a per diem
allowance to official expenses. In part for this reason, this Office has consistently counseled against altering lump sum expense allowances during a public officer's term of office.See, e.g., 64 Opinions of the Attorney General 267 (1979) (per diem payment to members of State savings and loan board); 41 Opinions of the Attorney General 313, 315 (1956) (expense allowance of sheriff); cf. Savage v. City of Atlanta,242 Ga. 671, 679, 251, S.E.2d 268 (1978) (lump-sum unverified monthly expense payment tantamount to compensation).
Finally, nothing in Article III, § 35, would require that an unlawful action altering an official's compensation be given effect. As indicated above, it is our opinion that the $78 increase was not authorized by statute and that the Commissioners are not otherwise authorized to enhance their compensation. Accordingly, the State Constitution would not have required that the $90 per diem amount be paid to the newly elected Board.
 III Conclusion
In summary, we conclude, based upon the facts provided to us, that the increase in per diem compensation was not authorized by law. Because the Commissioners' action was apparently beyond their authority, the new Board of Commissioners would not have been entitled to the increased per diem allowance. Nothing in the constitutional prohibition against altering a public officer's compensation during his term of office requires that an unlawful action be given effect. In our opinion, the lump sumper diem amount should not be altered during the term of the new Commissioners, particularly if they receive reimbursement for most of their actual expenses. Of course, this would not prevent a change in reimbursement related to specific job-related expenses.
In your letter you indicate that you are considering possible legislation to define better the ability of county commissioners to change their per diem allowances. At least three alternatives come to mind.[10]
First, the General Assembly could simply reverse the 1984 amendment that delegated authority to the County Commissioners to set their own expense allowance through the county budget and specify the expense allowance itself in an amendment to § 3-1(b)(2).
Second, the General Assembly could retain the delegation of authority but restrict the discretion of the Commissioners by designating the particular types of expenses encompassed by the expense allowance or limiting the allowance to reimbursement of actual expenses incurred.
Finally, the lesson of this episode may not be that the delegation of discretion to local government officials is unwise but that public notice and discussion of controversial decisions leads to wiser decisions in the long run. It is likely that the original action to increase the allowance to $90 would never have happened if there had been public notice and airing of the proposed increase prior to the Commissioners' action. The General Assembly could create certain procedures prerequisite to any such action to provide such public notice and an opportunity for discussion. For example, the Commissioners might be required to conduct a public hearing on any proposal dealing with their own compensation or expense allowance and to give several weeks prior notice of that hearing.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
_________________________ Robert N. McDonald Chief Counsel Opinions Advice
[1] This Latin phrase translates as "by the day" and has come to mean "an allowance or amount of so much per day." Black's Law Dictionary, p. 1136 (6th ed. 1990).
[2] Those reports also suggest that the vote raising the perdiem amount took place at a "secret" meeting and raise the question whether the Board of Commissioners violated the State Open Meetings Act. Maryland Code, State Government Article ("SG"), § 10-501 et seq. We have been advised by the County Attorney that the meeting on November 24 was a public meeting and that the expense allowance was increased in open session, although the item was not specifically included in the agenda for that meeting.
Assuming that the facts are as related by the County Attorney, the only issue under the Open Meetings Act may be whether the Commissioners complied with the relatively minimal notice requirements of the Act. Whether the Board complied with the Act may be resolved by filing a complaint with the Open Meetings Compliance Board, which is authorized to issue written opinions as to whether a violation has occurred. SG, § 10-502.4. Judicial review may also be available. SG, § 10-510.
Whether specific advance notice should be required for proposed actions that increase the expense allowances of county commissioners may be an appropriate subject for legislation.See pp. 9-10 below.
[3] The General Assembly has periodically increased the amount of the Commissioners' salary: from $10,000 to $16,500 in 1977 (Chapter 150, Laws of Maryland 1977); to $18,500 in 1982 (Chapter 84, Laws of Maryland 1982); to $22,500 in 1985 (Chapter 90, Laws of Maryland 1985); to $30,000 in 1989 (Chapter 90, Laws of Maryland 1989); and to the current $32,500 in 1994 (Chapter 335, Laws of Maryland 1994). In each instance, the salary increase was enacted with the direction that it would go into effect at the beginning of the next term of the Board of Commissioners, in compliance with Article III, § 35, of the State Constitution.See pp. 7-9 below.
Apparently, no effort was made to seek a similar increase from the General Assembly prior to the term of the newly elected Board of Commissioners who took office on December 7, 1998.
[4] The predecessor statute to Article 25, § 28, was originally enacted in 1866 "to regulate and make uniform the compensation of County Commissioners." Chapter 134, Laws of Maryland 1866. Subsequently, exceptions for specified counties were added to the statute. See 68 Opinions of the Attorney General 303, 306-7 (1983). In 1994, after a number of counties adopted charter or code home rule and the public local laws relating to most of the remaining non home rule counties had been amended to specify commissioner salaries and expenses, the provision was repealed. Chapter 661, § 2, Laws of Maryland 1994.
[5] In 1988, in the course of raising the Commissioners' salary and reorganizing § 3-1 in tabular form, the General Assembly revised the provision in its present language. There was no evident intent to expand or restrict authorization for an expense allowance. Chapter 90, Laws of Maryland 1988.
[6] For example, members of the General Assembly receive a lump sum $400 transportation allowance for transportation expenses within their respective districts at the beginning of each calendar year. See 1998 Resolution of the General Assembly Compensation Commission Determining the Compensation and Allowances of Members of the General Assembly, Item 2C,reprinted in Maryland Code, State Government Article, Title 2, Subtitle 3, Item 2C.
As another example, federal employees who travel on official business generally receive travel expense allowances including reimbursement for actual transportation and lodging expenses within certain constraints and a lump sum allowance for meals and incidental expenses based upon location. 41 C.F.R. § 301. The meal and incidental expense allowance for various locations in Maryland range from $34 to $42 per day. Id. Appendix A.
[7] For example, mileage allowances might be pegged to the mileage allowance currently allowed by the Internal Revenue Service for federal income tax purposes. See26 C.F.R. § 1.62-2.
[8] For example, one of the outgoing Commissioners who voted for the increase is quoted as stating that the commissioners are underpaid and that the increase in per diem allowance would permit his successors to "catch up" with their secretaries in compensation. Baltimore Sun, p. B1 (December 1, 1998).
[9] In the context of a public body that can set an element of its own compensation, this provision also serves as a check on the ability of public officials to profit from their own official actions.
[10] Of course, any action taken by the General Assembly to change the per diem allowances of the Commissioners would have to be consistent with Article III, § 35.
 *Page 53